THE STATE *v.* MARTIN McAFEE.

A colored person upon trial for crime, has a right to object to any one's sitting in his case as a juror, who " believes that he cannot do impartial justice between the State *and a colored person*" ; *therefore,* where the Court refused to allow a preliminary question to that effect, to be asked, *Held,* to be error.

RAPE, tried before *Mitchell, J.,* at Fall Term 1869 of BURKE Court.

The prisoner was a *colored* man, and among the preliminary questions put to persons who were offered as jurors, he proposed to enquire, whether they believed that they could as jurors, do equal and impartial justice between the State and a colored man.

Upon objection by the Solicitor, the Court excluded the question.

Verdict, *Guilty* ; Rule, &c. Judgment and Appeal.

*Malone,* for the appellant, cited and commented upon *People* v. *Rogers & Valencia,* 5 Cal. 347 ; *State* v. *Benton,* 2 D. & B. 196 ; 2 Wharton Cr. Law, § 2997, and Selfridge's case.

*Attorney General, contra.*

*Personal* ill will is good cause of challenge, but suggestions of an antipathy *between races,* cannot be listened to under our present constitution.

SETTLE, J.   There are several exceptions to the rulings of his Honor who presided at the trial of this case.   We will only notice one, as, clearly, it is well taken, and entitles the the prisoner to a *venire de novo.*

The counsel for the prisoner proposed to ask a juror, if " he believed he could, as a juror, do equal and impartial justice between the State and a *colored* man," the prisoner being a colored man.   This question was objected to by the Solicitor, and disallowed by the Court.

The causes of challenge to the favor are so numerous as to be described by Lord Coke as " infinite."   Any fact or circumstance may be given in evidence, tending to establish bias, partiality or prejudice, on either side.   Not only may his declarations to others be shown, but a juror is bound to answer on oath, any question touching his competency, unless it tend to degrade him or render him infamous.   It is essential to the purity of trial by jury, that every juror shall be free from bias.   If his mind has been poisoned by prejudice of any kind, whether resulting from reason or passion, he is unfit to sit on a jury.   Here, his Honor refused to allow a proper question to be put to the juror, in order to test his qualifications.   Suppose the question had been allowed, and the juror had answered, that the state of his feelings towards the colored race was such that he could not show equal and impartial justice between the State and the prisoner, especially in charges of this character : it is at once seen that he would have been grossly unfit to sit in the jury box.

A remarkable case showing the practice on the circuit, as well as the prejudice in respect to color, came under my own observation shortly after the emancipation of the colored race.   The evidence showed that the old man had been secretly assassinated in the woods while feeding hogs, which was a part of his daily duty.   The Court permitted the Solicitor to ask each juror if he had any feeling which would prevent him from convicting a white man for the murder of a negro, though the evidence should prove him guilty.

Strange and discreditable as it may appear, the Court found it necessary, in addition to the regular panel, to order three special writs of *venire*, of fifty each, before twelve men could be found who did not answer that they would not convict a white man for killing a negro.

In *The People* v. *Rogers and Valencia*, 5 Cal. 347, the defendants, being Mexicans, proposed to ask a juror the following questions, to-wit:

"1. Are you not a member of a secret and mysterious order known as, and called Know-nothings, which has imposed on you an oath or obligation, beside which, an oath administered to you in a Court of justice, if in conflict with that oath or obligation, would be by you disregarded?

"2. Are you a member of any secret association, political or otherwise, by your oaths or obligations to which, any prejudice exists in your mind against Catholic foreigners?

"3. Do you belong to any secret political society known as, and called by the people at large in the United States, Know-nothings; and if so, are you bound by an oath or other obligation not to give a prisoner of foreign birth, in a Court of Justice, a fair and impartial trial?"

The Court refused to allow the questions, but, upon appeal, the Supreme Court reversed the judgment of the Court below; holding the question to be proper in a cause where foreigners were parties.

PER CURIAM.                          *Venire de novo.*