# Court of Appeals. ·

November 22, 1898.

## PEOPLE v. BAILER DECKER.

1. CRIMINAL LAW—JUROR.

Where it is obvious from the proof given that the juror whose name is called is not competent or indifferent between the parties the court may, even in the absence of a formal challenge, reject or excuse him.

2. SAME.

Where it is manifest from the juror's own statement that, if the case assumes a condition that is liable to arise on the trial, he will not be controlled by the law and evidence, he should not be permitted to serve as a juror in a case where such a question may be involved.

3. SAME.

Where, when the impanelling of the jury is completed, the defendant, still has a number of peremptory challenges, so that he may challenge any juror upon the panel with whom he was not satisfied, his substantial rights are not so affected as to warrant a reversal of his conviction.

4. SAME—EVIDENCE.

Evidence that several months before the homicide the defendant and decendent quarreled ; that in the presence of the witness the defendant took hold of a revolver that lay upon the table, and referring to his wife, said, " He had her medicine if she did not do as he said," and that the revolver he then had was the one employed when the tragedy occurred, shows the relation existing between the parties, and tends to show motive as well as deliberation and premeditation.

5. SAME—PREMEDITATION.

Under the statute, there must be, not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long.

6. SAME.

Where the evidence is sufficient to justify the jury in finding that the killing of the decedent was with premeditation and deliberation on the part of the defendant, the court properly declines to withdraw that question from the consideration of the jury.

7. SAME—MOTIVE.

Evidence of the defendant's threats, of frequent quarrels between the parties and the admission of the defendant that he killed his wife, constitutes sufficient proof of motive upon the part of the defendant.

8. APPEAL—COURT OF APPEALS.

The power, conferred by section 528 of the Code of Criminal Procedure in the review of capital cases, is not called into exercise by the appearance of some error which no exception points out, unless the substantial rights of the accused can be seen to be affected by it, and, therefore, justice demands a new trial ; and, in determining whether a new trial shall be granted under it, it is not the province of the court of appeals to review or determine controverted questions of fact arising upon conflicting evidence, but the jury is the ultimate tribunal in such case, and with its decision the court may not interfere unless it reaches the conclusion that justice has not been done.

APPEAL from a judgment, convicting defendant of murder in the first degree.

Appeal from supreme court, trial term.

Bailer Decker was convicted of murder in the first degree, and he appeals.

Affirmed.

The defendant was a colored man, and the decedent was a white woman. They were husband and wife, and lived together as such in the upper story of a house on Beach street, in Tottenville, in the county of Richmond, N. Y. The lower part of the house was occupied by two colored families, living on different sides of the hallway. In the evening of May 24, 1898, which was the day preceding the tragedy, the defendant had been in a saloon from about 9 o'clock until half past 11, and remained near there for an hour longer in conversation with a man by the name of La Forge. He then started for home, about a mile distant, and reached there at 1 o'clock. His wife left the house where they resided at about midnight, and returned at about 3 o'clock in the morning of May 25th. She was admitted by a sister of the defendant, who occupied one of the apartments on the first floor. The defendant then came to the door of the stairway, opened it for her, and both went upstairs. Shortly after, quarreling and loud talking were heard in their rooms, and the decedent ran downstairs. The defendant called to her to return and get her clothes. She went back, obtained a part of them, started down the stairs again, was then requested by the defendant to get all of her clothes, to which she replied

that she had all she wanted, and left the house. Shortly after, the defendant came downstairs, and soon three shots were heard in the direction of the house of a Mrs. Parnell. The defendant then returned, went upstairs, remained a few moments, and then left a second time. As he was passing out of the house, he called to his sister-in-law, who occupied another of the apartments on the first floor, and said : " Good bye. She is dead down the road." A single shot was then heard, and the defendant was found across the road from the house, wounded, with a revolver lying near. On the roadside in front of Mrs. Parnell's house, which was 400 feet from where the defendant was lying, his wife was found, with a bullet wound on the right side of her back. The autopsy disclosed that the cause of her death was hemorrhage of the lungs, occasioned by such wound. The defendant had previously threatened to use the revolver with which the decedent was finally killed unless she did as he said. He frequently called her vile and abusive names, and he and his wife led an unhappy and quarrelsome life. The defendant admitted that he fired three shots at the decedent, and that when the third was fired she fell. Two bullets, one taken from the body of the decedent and the other from the body of the defendant were identified, and shown to be of the same caliber as the revolver which was proved to have been in the possession of the defendant.

On the morning of the homicide, and after it occurred, articles of clothing belonging to and worn by the decedent were found between the house and the place where her body lay. When found, there was upon the body of the decedent only a night gown, and one of her shoes or slippers was near. The distance from the house to the place where a portion of her clothing was found was 300 feet. From that point to the place where other of her clothing lay was 72 feet, and the distance from the latter point to the place where her body was discovered was 118 feet. Thus the total distance from the house to the point where her body was found was 490 feet.

William J. Powers, for appellant.

George M. Pinney, Jr., for the People.

MARTIN, J. (after stating the facts). The defendant, in his brief, presents for determination upon this appeal questions as to the validity of several exceptions taken upon the trial, and asks for a new trial upon the further ground that manifest injustice has been done. Two of these questions relate to the impaneling of the jury. The defendant's claim is that two jurors were improperly excused by the court. John W. Bhair was summoned as a talesman, and upon examination as to his competency to serve he testified that the fact that the decedent was a white woman would have a decided influence upon him in arriving at a verdict, and that he could not decide the case according to the law and evidence where a white woman had married a colored man, and they had trouble. After giving this testimony, the court excused him. We think this evidence showed clearly that he would not have been a fair and impartial juror in the case, and that sufficient reason existed to justify the court in excusing him. But it is claimed that, as no challenge was interposed, it was error not to permit him to sit upon the trial. Section 358 of the Code of Criminal Procedure declares that the jury in a criminal case is to be formed as prescribed in the Code of Civil Procedure. When we turn to section 1166 of the latter Code, we find it provides that the first 12 persons who appear as their names are drawn and called, and are approved as indifferent between the parties, and not discharged or excused, must be sworn, and constitute the jury to try the issue. Thus, a juror who is not indifferent between the parties, and approval by the court as being indifferent, cannot act as one of the jury. The approval or determination as to his indifference and competency, when the question arises, is to be passed upon by the court. While it is doubtless true that a court cannot capriciously set aside as incompetent jurors who are clearly competent, and thus limit the selection of the jury to the jurors who may be left (Hildreth v. City of Troy, 101 N. Y. 234, 4 N. E. 559), yet, where it is obvious from the proof given upon the question that the juror whose name is called is not competent or indifferent between the parties, we think, even in the absence of a formal challenge, the court may reject or excuse him. The juror Bhair was examined as to his

qualifications to serve upon the jury in this case. His own testimony disclosed that he was not indifferent between the parties. While the record shows no formal challenge either by the prosecution or by the defense, it is manifest that both parties understood that the examination made was for the purpose of determining if he was competent and qualified to act. We think, under such circumstances, the court was justified in excusing him, although no specific challenge was interposed by either party. No objection to the ruling was taken upon the ground that no challenge had been interposed. If the objection had been made on that ground, there can be no doubt that the prosecution would have interposed a formal challenge. The juror was excused for reasons which were sufficient. To hold now that this general exception to the decision of the court entitles the defendant to a reversal of the judgment would be to give effect to a pure technicality, as it is not pretended that the rejection of this juror in any way affected the substantial rights of the defendant. The determination of the court as to his competency was, in no sense, incorrect, but a reversal is sought upon the mere technical ground that no formal challenge was interposed by the prosecution. To sustain the defendant's contention would be in direct contravention of the provisions of the Code of Criminal Procedure which declare that after hearing the appeal, the court must give judgment without regard to technical errors or defects, or 'to exceptions which do not affect the substantial rights of the parties. Section 542. Therefore we are of the opinion that the judgment in this case should not be disturbed upon that ground.

Frederick Gluckter was also summoned and upon an examination as to his competency as a juror he testified that, if the defendant killed his wife in a fit of jealousy, he would be lenient towards him for a lighter sentence; that, if she actually went with other men, it would induce him to accept a lighter sentence, no matter what the other proof might be; and that, under such circumstances, he could not conscientiously take an oath to serve as a juror, and be governed entirely by the law and evidence. He also testified that, if no such fact was proved in the case, he could then do his full duty as a juror, follow all the

instructions of the court, and decide the case fairly and impartially upon the evidence; but that, if such fact was proved, he did not think he could. The prosecution then challenged him for cause. The court inquired of the district attorney if, from his examination of the case, he anticipated the introduction of evidence tending to show that the man suspected his wife's infidelity, to which he replied that he did, and the court then remarked that the juror ought not to sit, as jealousy did not constitute any defense in such case. To this the juror said: " Some man may think his honor very much affected. I guess every man thinks so." The court replied, " I have already said to you that it does not constitute any defense in law ; " and the juror said, " I have just explained here what my opinion is." The court then said: " Your opinion is not justified by any law of the land, or by any moral law. You are excused." To the exclusion of this juror the defendant took a general exception. We think this ruling was entirely justified, and that it constituted no error. It is manifest from the juror's own statement that, if the case assumed a condition that was liable to arise on the trial, he would not be controlled by the law and evidence. That a person entertaining such views should not be permitted to serve as a juror in a case where such a question might be involved is too plain to require discussion. Moreover, it is claimed and undisputed that when the impaneling of the jury was completed, the defendant still had a number of peremptory challenges, so that he might have challenged any juror upon the panel with whom he was not satisfied. No juror was permitted to sit to whom the defendant made any substantial objection. Under these circumstances we are unable to find anything in the rulings of the court upon this subject which affected the substantial rights of the defendant, or which would justify a reversal.

On the trial, Martha Parnell was called as a witness for the people, and was permitted, under objection, to testify that several months before the homicide the defendant and decedent quarreled; that in the presence of the witness the defendant took hold of a revolver that lay upon the table, and, referring to his wife, said, " He had her medicine if she did not do as he said," and

that the revolver he then had was the one employed when the tragedy occurred. We think there is no doubt as to the competency of that evidence. It showed the relation existing between the parties, and tended to show motive as well as deliberation and premeditation. The evidence of former threats is always admissible. As was said by Judge Ingraham in Jefferds v. People, 5 Parker, Cr. R. 522 : " It is no objection to such evidence that a period of years had expired since the threats were made. On the contrary, long continued animosity and ill will are better evidence of a state of mind which will ripen into deliberate murder than the hasty ebullition of passion. The theory of the law of murder is that it is made on premeditation, and the motives for such an act are not less powerful because they are the result of ill feelings entertained for years." We are clearly of the opinion that this evidence was admissible, and that the court committed no error in receiving it.

At the close of the people's case the defendant's counsel requested the court to withdraw from the consideration of the jury the question of murder in the first degree, for the reason that there was no proof of a deliberate and premeditated design to effect the death of the person killed. This request was refused, and the defendant's counsel excepted. We think the proof was sufficient to make the question of premeditation and deliberation a question of fact, and to require its submission to the jury. The premeditation and deliberation necessary to constitute the crime of murder in the first degree has frequently been under consideration by this court, and the rule, as established by its decisions, is stated by Judge Earl in People v. Majone, 91 N. Y. 211, as follows : " Under the statute, there must be, not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate and premeditated design to kill was formed must be determined from all

the circumstances of the case." The rule there stated has been recognized and affirmed in many other cases in this court, of which the following are a few : Leighton v. People, 88 N. Y. 117; People v. Beckwith, 103 N. Y. 361, 368, 8 N. E. 662; People v. Conroy, 97 N. Y. 62, 76; People v. Hawkins, 109 N. Y. 408, 17 N. E. 371; People v. Johnson, 139 N. Y. 358, 34 N. E. 920 ; People v. Constantino, 153 N. Y. 24, 37, 47 N. E. 37. Applying this well-established rule to the facts and circumstances of this case, it is obvious that the evidence was sufficient to justify the jury in finding that the killing of the decedent was with premeditation and deliberation on the part of the defendant, and the court properly declined to withdraw that question from the consideration of the jury. These considerations also apply to the motion of the defendant to direct the jury to acquit, and to the exception to the court's refusal to grant a new trial after verdict.

The defendant also contends that there was no sufficient evidence of motive upon the part of the defendant. We think otherwise. The evidence of the defendant's threats, of frequent quarrels between the parties, the admission of the defendant that he killed his wife, and the other facts and circumstances disclosed, render it manifest that the proof of motive was quite sufficient.

The only remaining ground upon which the defendant claims that he is entitled to a new trial is that manifest injustice has been done. Section 528 of the Code of Criminal Procedure provides : " When the judgment is of death, the court of appeals may order a new trial, if it be satisfied that the verdict was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below." Laws 1895, c. 119. This section has been several times under consideration by this court, and it has been quite uniformly held that the power conferred by it in the review of capital cases is not called into exercise by the appearance of some error which no exception pointed out, unless the substantial rights of the accused can be seen to have been affected by it, and therefore justice demands a new trial; and that, in determining whether a new trial shall be granted under

it, it is not the province of this court to review or determine controverted questions of fact arising upon conflicting evidence, but that the jury is the ultimate tribunal in such a case, and that with its decision the court may not interfere unless it reaches the conclusion that justice has not been done. People v. Cignarale, 110 N. Y. 23, 26, 17 N. E. 135; People v. Trezza, 125 N. Y. 740, 26 N. E. 933; People v. Kelly, 113 N. Y. 647, 21 N. E. 122; People v. Hoch, 150 N. Y. 291, 44 N. E. 976; People v. Youngs, 151 N. Y. 210, 222, 45 N. E. 460; People v. Constantino, 153 N. Y. 24, 35, 47 N. E. 37. Applying these rules to the facts in this case, it becomes obvious that a new trial should not be granted on that ground. The evidence can hardly be said to be even conflicting, but is of a character which justified, if it did not require, the verdict rendered. Therefore, after carefully examining all the evidence contained in the record, and the various exceptions to which our attention has been called, we have reached the conclusion that no sufficient grounds exist to justify a reversal of the conviction in this case.

The judgment of conviction should be affirmed.

All concur.

Judgment affirmed.

## NOTE TO PEREMPTORY CHALLENGE.

It is error to refuse on a separate trial of defendant jointly indicted for murder, to permit him to interrogate jurors as to their opinion of the guilt of his co-defendant, who had been previously convicted, so as to enable him to use intelligently his peremptory challenges. State v. Steeves (Or.), 43 P. 947.

Peremptory challenges, under section 1863, R. S. 1894, must be made before the jury is sworn. Kurtz v. State (Ind. Sup.), 42 N. E. 1102. In the case above cited, a juror told the court, after the first witness had begun to testify, that he might have talked about the case, though he had stated the contrary on his examination. Defendant thereupon moved for his examination, and the court granted the motion. Upon the juror's proving competent, defendant who had not exhausted all his peremptory challenges, without any further motion, challenged him peremptorily. It was held that the challenge was properly denied, and that the proper course was to move to set aside the submission.