THOMAS JOHNSON V. STATE OF NEBRASKA.

FILED FEBRUARY 28, 1911.   No. 16,699.

1. **Criminal Law:** JURORS: COMPETENCY. Where, upon the *voir dire* examination of a juryman, it is shown that he is a fair and conscientious man, and is in all other respects competent to serve as a juror, the mere fact that he has a feeling that the white race is superior to the colored race, of which the defendant is one, does not render him incompetent.

2. ———: ———: ———. On the trial of a defendant charged with the crime of murder in the first degree the positive statement of a juror that "he would not, under any circumstances, join in a verdict of guilty with the death penalty," renders him incompetent, and it is not error for the trial court to excuse him for cause.

3. ———: CHALLENGE TO JURORS: DISCRETION OF COURT. On the trial of one charged with a criminal offense, it is the duty of the court, in the exercise of a sound discretion, to arrange the order of peremptory. challenges, and the fact that the state is accorded the last challenge affords no ground for a new trial.

4. ———: WITNESSES: IMPEACHMENT: VOLUNTARY STATEMENTS. A voluntary statement, not in the nature of a confession, made to the prosecuting attorney and by him reduced to writing and signed by the defendant in the presence of disinterested parties, giving an account of his movements at and immediately after the time when the crime with which he stands charged was committed, may be introduced in evidence to contradict his 'subsequent statements in regard to that matter.

5. ———: NONEXPERT EVIDENCE: QUESTION FOR JURY. It is not error

to permit a nonexpert witness who saw the defendant and made an examination of his garments on the next day after the murder was committed, with which the defendant was charged, to testify that he found blood stains upon the defendant's shirt sleeve and upon his coat; that the coat was still damp at that time as though an attempt had been made to wash out such blood stains. The weight and probative force of such evidence is a matter for the determination of the jury.

6. ———: INSTRUCTIONS. Instructions complained of, examined and set forth in the opinion, and *held* to have been properly given.

7. ———: ———. Where the trial court, upon his own motion, has properly instructed the jury on a matter of defense, he is not required to repeat the instruction in another form at the defendant's request.

8. ———: NEW TRIAL: COMPETENCY OF JURORS. The defendant, as one of the grounds set forth in his motion for a new trial, alleged that the jury had been rendered incompetent to try him by reading certain newspaper articles published in the Omaha daily papers. That question was determined by the district court upon affidavit evidence and the oral testimony of the jurors themselves. Upon an examination of the record, *held* that the ruling of the district court was sustained by sufficient evidence.

9. ———: VERDICT: SUFFICIENCY OF EVIDENCE. The jury in a criminal case are the sole judges of the effect and probative force of the evidence, and, where it appears from the record that there was competent evidence to sustain every material charge contained in the information, it cannot be said by a reviewing court that the evidence is insufficient to sustain their verdict.

ERROR to the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*J. L. Kaley* and *H. G. Meyer,* for plaintiff in error.

*Arthur F. Mullen, Attorney General,* and *George W. Ayres, contra.*

BARNES, J.

Thomas Johnson was charged in the district court for Douglas county with the killing of one Henry R. Frankland, while perpetrating or attempting to perpetrate a robbery. In short, the information sufficiently charged a

violation of the provisions of section 3 of the criminal code. To this information the defendant entered a plea of not guilty, and a trial resulted in his conviction. By their verdict the jury fixed the death penalty as his punishment, and he has brought the case here for review by a petition in error.

1. Defendant contends that the district court erred in overruling his objections to certain of the jurors. Defendant was a colored man, and it appears that one George Mangold was called as a juror, and on his *voir dire* examination stated, in substance, that he had a feeling of prejudice against the colored race. But, on further inquiry, it fully appeared that he had no prejudice against the defendant, and his so-called prejudice against the race was simply a feeling or belief that the colored race was inferior to the white race, and that such feeling or belief would in no manner affect his verdict. The defendant's challenge for cause was overruled, for which he now assigns error. The only argument advanced by counsel for the defendant in support of this assignment is a statement contained in his brief that "this court must see that this juror was absolutely prejudiced and biased against the defendant, and was an incompetent juror to sit in the case." This statement is neither persuasive nor convincing. Without doubt many white men have the same feeling as did juror Mangold, but this alone has never been considered sufficient to disqualify them from acting as jurors in cases where colored men have been tried for criminal offenses. The record discloses that the juror was a fair and conscientious man, and possessed all of the necessary qualifications; that he was competent there is no doubt. It also appears that defendant waived a number of his peremptory challenges, and had ample opportunity to excuse this juror if he had desired to do so, therefore the challenge for cause was properly overruled. It is also contended that one Dumont was improperly excused from jury service in this case. But it appears from an examination of the record that he testified "that he would not,

under any circumstances, join in a verdict with the death penalty." This was a sufficient reason for sustaining the state's challenge for cause. Criminal code, sec. 467; *St. Louis v. State*, 8 Neb. 405; *Bradshaw v. State*, 17 Neb. 147; *Johnson v. State*, 34 Neb. 257; *Rhea v. State*, 63 Neb. 461. Complaint is also made because the district court, in arranging the order of peremptory challenges, accorded the prosecuting attorney the right of the last challenge. It is claimed that, after the state exercised this challenge, J. J. Lynch and W. A. Rourke were called into the jury-box for examination, and that they were most objectionable jurors for the defense. It is argued that juror Lynch was acquainted with most of the witnesses, and belonged to the same society that they and the prosecuting attorney belonged to; that he had talked with a number of people about the case, and had read newspaper comments, and it was error for the court to retain him upon the jury. The record is a sufficient refutation of those statements. It discloses that neither of these jurors knew anything about the case at all. Rourke testified that he had never heard of it until he was called into the jury-box for examination; while Lynch testified that he had heard very little about it; that he had neither formed nor expressed any opinion as to the guilt or innocence of the defendant; and he appeared, in all respects, to be a competent juror.

2. It is further contended that the court erred in admitting in evidence exhibit 10. This exhibit appears to be a statement made by the defendant to the county attorney, which was by him reduced to writing, and was signed by the defendant in the presence of two disinterested persons. It is argued that the defendant was thus compelled to testify against himself; that the statement had been obtained from the defendant against his will and by coercion on the part of the officers, in whose custody he was at the time it was made. The record does not bear out the statement of counsel. The exhibit in question does not purport to be a confession, but was a voluntary statement of the defendant as to where he went and what he did at

and immediately after the time the murder was committed, and it was introduced for the sole purpose of contradicting his later statements upon that question. We are of opinion that the court did not err in admitting the exhibit in evidence. *Taylor v. State,* 37 Neb. 788.

3. It appears that upon the trial one Captain Moyston, who saw the defendant and made an examination of his garments on the next day after the murder was committed, was permitted to testify that he found what he thought were blood stains upon the defendant's shirt sleeves and upon his coat; that the coat was still damp at that time as though an attempt had been made to wash out such blood stains. It is insisted that this was reversible error, and in support of his contention the defendant cites *State v. Alton,* 105 Minn. 110. That decision does not justify the defendant's claim. It was there said: "The single fact that a stain upon defendant's shirt sleeve was blood, it not being shown to be human blood, and it appearing that it may have been deposited there for six months or a year, was too remote and of no probative force in establishing the identity of defendant as the guilty party." In the case at bar the defendant was apprehended, was placed under arrest, and his garments examined on the day immediately following the evening when the crime was committed. It is sufficiently shown that Frankland was murdered at or about 9 o'clock on the evening of the 13th day of October, 1909; that the defendant was immediately suspected because of his having been seen in the company of the deceased at just about that time; that he was arrested and his clothing examined about noon on the following day. We are therefore of opinion that the testimony was competent, and that it was for the jury to say how much weight, if any, should be given to it.

4. Complaint is made of a number of the instructions given to the jury. It is contended that the court erred in giving the fourth instruction, which treats of the question of reasonable doubt. That instruction reads as follows: "You are instructed that by the words 'reasonable doubt'

used in this charge, is meant an actual, substantial doubt of guilt arising in your minds from the evidence or want of evidence in the case. If, after a careful and impartial consideration of all the evidence, the jury have an abiding conviction of the guilt of the defendant and are fully satisfied to a moral certainty of the truth of the charge made against him, then you are satisfied beyond a reasonable doubt." The language and substance of this instruction was approved in *Wheeler v. State,* 79 Neb. 491, and *Maxfield v. State,* 54 Neb. 44. As was said in *Wheeler v. State, supra:* "Such an instruction is more favorable to the defendant than to the state."

Instruction number 6, given by the district court on his own motion, is assailed as erroneous. By that instruction the court informed the jury, in substance, that every sane person is presumed to intend the natural and probable consequences of his voluntary acts; that if they found the defendant did the cutting and did it purposely then he did it intentionally; that intent was an essential element in the case, and was required to be established by the evidence the same as any other material element beyond a reasonable doubt. They were also informed that a knife is a deadly weapon, and were told that, if the defendant did strike at the body of the deceased, Henry R. Frankland, with such a weapon, then the presumption would be that the defendant intended the natural and probable consequences of his act. The particular complaints lodged against this instruction are that the jury were informed that, if the cutting was done purposely, then they were at liberty to find that it was intentionally done, and that a knife was a deadly weapon.

Viewing these instructions in the light of the evidence, we are of opinion that they were correct, and that the defendant's criticisms are without merit.

5. Instruction 12 is strenuously assailed because the jury were told, in substance, that they were not required to believe the testimony of the defendant absolutely, and that they had a right to consider the interest of the de-

fendant in the prosecution. The instruction reads as follows: "You are instructed that you have no right to disregard the testimony of the defendant on the ground alone that he is defendant and stands charged with the commission of a crime, nor are you required to receive the testimony of the defendant as true, but you are to fully and fairly consider whether it is true, and for this purpose you have a right to consider the interest of the defendant in this prosecution. The law presumes the defendant to be innocent until he is proven guilty by the evidence beyond a reasonable doubt, and the law allows him to testify in his own behalf, and you should fairly and impartially consider his testimony together with all the other evidence in the case." The substance of this instruction has been approved by this court in *Philamalee v. State*, 58 Neb. 320; *Richards v. State*, 36 Neb. 17; *Housh v. State*, 43 Neb. 163; *Johnson v. State*, 34 Neb. 257; *Davis v. State*, 31 Neb. 247. It was therefore properly given.

6. Defendant complains of the refusal of the district court to give the jury the fourth instruction requested by him. This instruction related to the question of an alibi. An examination of the record discloses that, while the instruction requested was refused, the court did instruct the jury upon that question as follows: "There is evidence in this case tending to show an alibi; that is, that at the time the crime with which the defendant stands charged was committed, the defendant was at such a distant and different place that he could not have participated in its commission. You will carefully consider the testimony on the subject of an alibi with all of the other evidence in the case, and from that, if you are not satisfied beyond a reasonable doubt of the defendant's presence at the commission of the crime charged herein, then you should find the defendant not guilty." This instruction is certainly a correct statement of the law and was all that was necessary upon that question.

7. The record discloses that after his conviction the defendant filed a motion for a new trial, and alleged therein

that the jury were incompetent to try him, for the reason that before they were confined by the court, and while they were still allowed to separate, after the commencement of the trial, certain articles published by the newspapers in the city of Omaha prejudicial to the rights of the defendant were read by them. This question was tried by the district court upon affidavit evidence and the oral statements of the jurors, and was resolved against the defendant. It is quite apparent that the record is sufficient to sustain the judgment of the trial court upon this point, and therefore this assignment affords no ground for a new trial.

8. It is strenuously contended that the evidence is not sufficient to sustain the verdict. Without attempting to quote the testimony contained in the voluminous bill of exceptions brought to this court, it is sufficient to say that the deceased and the defendant were together at the Union station in Omaha, Nebraska, on the evening of the 13th day of October, 1909; they were seen by a number of persons in each other's company for an hour or more immediately preceding the commission of the crime; they were endeavoring to obtain passage to Chicago without paying full fare therefor; that during that time they visited a saloon situated on the west side of the viaduct nearly opposite the Union station; there they drank together, the deceased paying for the drinks and receiving $9.75 in change, which the bartender stated the deceased put into his right-hand trousers pocket. This was evidently seen by the defendant; that not more than 15 minutes before the deceased was found under the viaduct in a dying condition they interviewed a Pullman car porter on a train that was made up and about to depart for the East; that, failing to obtain passage, they left the train and departed in the direction of the place where the murder was committed, and which was probably not more than 100 feet from where they were last seen together; that the place where the deceased was assaulted was under the Tenth street viaduct, and within 200 feet of the south door of

the passenger station, where it was dark, and where such a crime could have been committed unseen by any one, unless he should be in that immediate vicinity; that, when found, the deceased revived sufficiently to exclaim that he had been cut with a razor and robbed. His throat was badly mutilated and cut by some sharp instrument, probably a knife or razor, and he had a lump upon his head as though he had been struck with some blunt instrument. It also appears that the same evening, and within a short time thereafter, defendant had possession of the watch and chain which had been owned, and was that day carried by, the deceased. The evidence shows that the change which the bartender had paid to the deceased at the time the defendant drank with him had been removed from his person. It further appears that the defendant sold the watch to a pawnbroker in the city of Omaha during the forenoon of the next day; that, when arrested, there was found upon his clothing what seemed to be blood stains; that immediately after he left the Union Pacific depot on the night in question the defendant went to an assignation house kept for the accommodation of colored people; that it was there observed that he was attempting to remove some stain from his coat, which he accounted for as soup which he had spilled upon his garment; that he stayed all night at this resort with one of its inmates, and when he left in the morning stole the money that he had given her for his entertainment; that when arrested he claimed that he had bought the watch in question in Lincoln, Nebraska, some three or four months before that time; that he afterwards stated that he purchased it of a colored man on one of the streets of Omaha, about half past 9 o'clock on the night the murder was committed; that he did not know the colored man's name from whom he purchased it, but claimed to have paid $4.50 for the watch and chain. It was shown by the defendant's own statement that at one time he had pleaded guilty to a charge of grand larceny, and had served a term of 18 months in the Nebraska state penitentiary therefor. The record also shows that

the defendant made many different and contradictory statements in regard to himself and his whereabouts on the day before, and the evening when, the crime was committed; that he had no regard for the truth, and was evidently a man of no moral sensibility whatever. Indeed, there was no lack of evidence against him upon any material element of the charge contained in the information.

Without further statement of the facts, it seems clear to us that there was sufficient evidence to warrant the jury in convicting the defendant of the crime charged against him, and a careful examination of the record satisfies us that it contains no reversible error. The judgment of the district court is therefore affirmed, and the 19th day of May, 1911, is hereby fixed for carrying into execution the judgment and sentence of the district court.

AFFIRMED.

REESE, C. J., dissenting.

I have read the evidence in this case on the part of the state and the testimony offered by the defense. As a general thing the accused sustained himself remarkably well under a severe and, to say the least, a zealous cross-examination. True, there are some contradictions in his testimony, but the adroit way in which the questions were, in some instances, propounded would, with almost any witness, when we consider the length and scope of the cross-examination, tend to produce mistakes and apparent contradictions. But I lay aside all evidence offered by the defense, and consider that for the prosecution alone. I freely admit the evidence impresses me more or less strongly with the belief that the accused is guilty of the murder of Frankland. But, as the case is here upon the contention that the verdict of the jury is not sustained by sufficient evidence, it is our duty to examine that evidence and decide if it is sufficient to justify the taking of a human life. The evidence by which it is sought to connect the accused with the killing of Frankland is all circumstantial. There is no direct proof anywhere in the

record that he committed the deed. He was seen in company with Frankland, publicly, a short time before the body of Frankland was discovered. He was in possession of Frankland's watch a very short time after the assault was made. He made no effort to secrete the watch, exhibited it openly, sold it, and voluntarily informed the police officers where it had been sold, and took them to the place where the sale had occurred. The clothing and knife upon which it is claimed blood stains were found were in the possession of the prosecution during the whole time intervening between noon of the next day after the murder and the date of the trial, and no effort was made to have the alleged blood stains submitted to a microscopical examination or to any other scientific test, and the state depended solely upon the unreliable testimony of the police officers, who were willing to testify that the stains upon the clothing and knife were blood, basing their testimony upon a visual inspection. These articles were kept during those long months in the city of Omaha, and within a stone's throw almost of any number of accomplished scientists who could have demonstrated the fact of the presence or absence of blood to a certainty, and at a minimum of expense, if the cost had been anything. A human life was at stake on the trial. The test of the stains could have put the question of the existence or absence of blood at rest and beyond all dispute. The prosecution saw proper to try the case without this test. The A B C of the law of evidence is that the evidence produced must be the best of which the case is susceptible. I grant the evidence introduced was competent, but the most convincing evidence of the character of those alleged stains would be the scientific test. Science can detect the existence of fresh blood, fresh blood dried, and dried blood. It seems to me there was no good reason for entering upon that trial without the tests having been made, and resorting to the wholly untrustworthy testimony of the police. The testimony of the harlot as to her smelling blood was equally untrustworthy. The fact of the accused

scratching his coat sleeve is of slight persuasive force. We all have done it. We all do it. I base this dissent solely upon the ground that the evidence of the guilt of accused is not sufficient to justify the extreme penalty of the law. Admitting that the rules of evidence were not violated in this trial, and that all the evidence adduced was the best of which the case was susceptible, we are yet confronted with the fact that every word of the criminating evidence offered may be absolutely true, and yet the accused be innocent.

The evidence produced by which it was sought to connect plaintiff in error with this murder was what is denominated circumstantial, the introduction of which is approved by the law of the land, and some features of the case are persuasive that he is the guilty party. But is that sufficient to justify the taking of his life and thereby closing the door against the truth should it be that he is not guilty? For one, I say: No. I am willing to join in an affirmance with the penalty of life imprisonment, but am not willing to affirm the death sentence, and hope the day of execution may be deferred until at least one month after the probable adjournment of the legislature, as it is possible the law may be changed so as to abolish the death penalty if the conviction is based upon circumstantial evidence. Circumstantial evidence is often a valuable aid in the detection of crime, but it is frequently misleading, and is believed by many to be unreliable and dangerous, in which I concur.