**Rufus FRASIER, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 5407.**

United States Court of Appeals
First Circuit.
May 22, 1959.

Herald P. Fahringer, Jr., Buffalo, N. Y., Lipsitz, Green & Fahringer, Buffalo, N. Y., on the brief, for appellant.

George H. Lewald, Asst. U. S. Atty., Boston, Mass., J. Walter Yeagley, Acting Asst. Atty. Gen., Anthony Julian, U. S. Atty., Boston, Mass., and Clinton B. D. Brown and Jerome L. Avedon, Attys., Department of Justice, Washington, D. C., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the defendant, Rufus Frasier, from a judgment of conviction of the United States District Court for the District of Massachusetts entered on July 22, 1958. The judgment was based on a jury verdict finding the defendant guilty on two counts of an indictment charging violations of 18 U.S. C. § 1001 (1952).[1] The first count charged that the defendant knowingly and willfully on or about August 6, 1952 executed and presented a false statement to the Department of the Army of

---

1. "§ 1001. *Statements or entries generally.*

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

the United States when he represented that he had not been a member of the Communist Party, U.S.A. The second count charged the defendant with a similar false statement in his denial of having attended formal or informal meetings or gatherings of the Communist Party, U.S.A.

The Government in support of these charges introduced a "Loyalty Certificate for Personnel of the Armed Forces." The defendant's signature was at the bottom of the second and third pages of this form. The third page contained a list of totalitarian, subversive and anti-constitutional organizations which organizations had been so designated by the United States Attorney General on October 30, 1950, pursuant to Executive Order 9835, 3 C.F.R., 1943–1948 Comp., p. 627, 5 U.S.C.A. § 631 note. One of these organizations was the Communist Party, U.S.A. The third page of this form also contained a statement immediately above the signature that the signer had read the list of organizations. The second page, which contained the allegedly false statements, states that the signer has read and understood the instructions on the form and has also read the list of subversive organizations on page three. This page also states that the signer has listed in a table below any subversive organizations with which he was associated in any of the following respects: (1) as a member, (2) as an employee, (3) by attendance or presence at formal or informal meetings or gatherings, (4) by attendance or presence at organizational or social activities of these subversive organizations or sponsored by them, (5) by distribution of their publications or (6) by any other identification or association. If the signer had no association with any of the listed subversive organizations he was to so indicate by writing "none" in the space indicated. The Loyalty Certificate executed by the defendant had the word "none" stamped in the appropriate space and did not list the Communist Party, U.S.A. as an organization with which he had any association.

In support of its contention that the defendant had been a member of and associated with the Communist Party, the Government relied on the testimony of two paid F.B.I. informants who had been members of the Communist Party in the Buffalo, New York, area. These witnesses testified that the defendant in 1948, 1949, 1950 and 1952 had attended many Communist Party meetings, some of which were closed to nonmembers of the Communist Party, and had also attended many Communist Party social functions, one of the objectives of which was to raise funds for the Communist Party. The defendant who took the stand on his own behalf, although contending that he had been mainly interested in Negro rights, the Henry Wallace campaign, and the American Labor Party, admitted that he probably had made contributions to the Communist Party, that he had attended meetings at Communist Party headquarters, that he had been notified to attend these meetings, and that he had also attended at least one Communist Party convention. He further testified that he first refused to sign the Army Loyalty Certificate but did so later following a personal conference with the Army officer in charge of such certificates at Fort Devens. He testified that he was reluctant to sign because of his association with the American Labor Party but did so when he discovered this organization was not on the list of subversive organizations.

The defendant has raised five points in his appeal. Four of these are without substantial merit and do not warrant extensive discussion. The fifth point, however, does raise a substantial question, our answer to which necessitates vacating the judgment below.

The defendant first suggests that the district judge's instruction to the jury as to the material elements required for the finding of membership in the Communist Party was defective and relies on Fisher v. United States, 9 Cir., 1956, 231 F.2d 99 as support for this contention. However, we are of the opinion that viewed as a whole the court's charge

met the standards laid down in that case. The jury was specifically instructed that " * * * before you can find that the defendant was a member of the Communist Party, you must find that he was aware * * * that he was joining an organization known as the Communist Party and joined it of his own free will; also that he was accepted by the organization. In deciding these matters you may take into consideration whether the defendant complied with any of the Party's requirements of membership, such as signing the registration form. There is some evidence here that he did. Attendance at meetings as a delegate, and whether or not he made any contributions to the Party. * * * " The jury was further instructed that " * * * if you find the defendant was merely in sympathy with the aims of the Communist Party, he merely cooperated intermittently with the Communist Party in some of its lawful activities but was not cooperating in his capacity as a member, you would not be warranted in finding from this that he was a member of the Party." Moreover, there is ample evidence to support the jury's finding that the defendant desired to become a member of the Communist Party and that it, as is evidenced by his admission to closed meetings and his selection as delegate, recognized him as a member. See Jencks v. United States, 1957, 353 U.S. 657, 679, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (concurring opinion).

 The defendant also contends that the evidence was insufficient to prove that he "knowingly and willfully" made any false statements. It is urged that because the word "none" was stamped on the certificate by an Army officer following its signing by the defendant, rather than by the defendant personally, the defendant in effect was only signing a blank paper and he, therefore, could not have made any misrepresentation. This conclusion is unsound for several reasons. If the defendant's testimony is accepted, the application of the stamp to the certificate occurred only after he had discussed the certificate with his company commander, had read the list of subversive organizations and had informed him that he did not belong to any. Moreover, even if the word "none" is discounted it is clear that the defendant, by not entering the name of the Communist Party as an organization with which he had been associated and then signing the certificate, had indicated falsely that he was not a member of that organization.

 The third point raised by the defendant is that the false statements allegedly made by the defendant do not fall within the purview of Section 1001, supra, as a matter of law. For this point, the defendant relies on United States v. Stark, D.C.D.Md.1955, 131 F. Supp. 190. However, the facts presented in that case are dissimilar to those presented here. More relevant to our decision is the case of Marzani v. United States, 1948, 83 App.D.C. 78, 168 F.2d 133, affirmed 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431. In the Marzani case, statements denying membership in the Communist Party were found to have been false and punishable under Section 1001 when made by an employee of the State Department to his superior following a request for that employee's resignation on loyalty grounds. To allow clearly false statements on material facts, such as those found by the jury to have been made by this defendant as a member of the armed forces to a superior officer, to escape from the coverage of Section 1001 would frustrate the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from deceptive practices. See United States v. Gilliland, 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598.

[5] The defendant's fourth point seems to be based on the misconception that in order for the defendant to be found guilty of violating Section 1001 in the second count of the indictment, it is necessary that the Government prove that he was "affiliated" with the Communist Party or that he was aware of and furthered that organization's illegal

objectives. But in the second count the defendant is not being prosecuted for his attendance at these Communist Party meetings but because he falsely denied having attended them. The legality or illegality of his conduct in attending these meetings is irrelevant to the issue presented here which is whether or not he willfully and knowingly falsified the statement as to his past associations with the Communist Party. The Government provided ample evidence both through its own witnesses and the testimony of the defendant himself from which the jury could find beyond a reasonable doubt that he had attended Communist Party meetings, had falsely denied such attendance and had thus violated Count Two of the indictment.

The defendant's fifth point concerns the district judge's unequivocal refusal, following a request by the defendant's trial counsel, to examine the prospective jurors as to whether they would have any bias or prejudice against the defendant because he was a negro. Although we are mindful of the wide discretion given the district court in the examination of jurors under Fed.R.Crim. P. 24(a), 18 U.S.C., and have considered the Government's arguments that this case does not involve a crime of violence such as is likely to arouse racial prejudice, we are bound by the broad rule set forth in Aldridge v. United States, 1931, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054. See United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 228, affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. We, therefore, hold that the district court committed error in refusing to inquire as to the existence of any bias or prejudice on the part of the jurors because the defendant was a negro which would preclude them from rendering a fair verdict.[2]

2. It is to be noted that no question inquiring as to the existence of any general bias or prejudice was asked on the *voir dire* by the district judge. On the contrary, the only inquiry concerning prejudice was relative to the nature of the charge and the fact that it involved the

A judgment will be entered vacating the judgment of the district court, setting aside the verdict and remanding the case for further proceedings not inconsistent with this opinion.

Army of the United States. There was no inquiry broad enough to include any bias or prejudice that might have existed because the defendant was a member of the colored race. Cf. Commonwealth v. Lee, 1949, 324 Mass. 714, 88 N.E.2d 713.