**UNITED STATES of America,
Appellee,**

v.

**Conester GORE, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Haywood LILES, Appellant.
Nos. 14184, 14249.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1970.

Decided Dec. 30, 1970.

---

11. Cf. 18 U.S.C. § 1503 which prescribes punishments of up to $5,000 fine and five years' imprisonment for analogous misconduct.

prejudice would prevent any juror from giving a fair and impartial verdict because the defendant was a Negro charged with the murder of a white policeman. The principal question of substance in this case is whether *Aldridge* applies. Holding that it does, we reverse the conviction of Haywood Liles and Conester Gore for possessing property stolen from a shipment moving in interstate commerce. 18 U.S.C. § 659 (1964), as amended, (Supp. II, 1966).

Counsel for Liles requested the trial judge to ask on voir dire whether any member of the jury would be prejudiced by the fact that the defendants were Negroes.[1] The judge, believing that the question would improperly inject a racial issue into the case, refused. The voir dire which the judge conducted included questions about the occupation of the jurors, their connection with the defendants, the shipper or the consignee of the stolen property, their acquaintance with counsel, and whether they had heard or read anything about the case. No juror was challenged for cause. Through the use of peremptory challenges, a jury consisting of white persons was selected.

The government suggests that *Aldridge* should be confined to its facts, and it argues that at most the error, if any, was harmless. We are persuaded, however, that the government's position is unsound on both scores.

*Aldridge* does not expressly limit its holding to crimes of interracial violence. Instead it appears that the Court intended to lay down a broad rule that in any criminal case an accused has a right to inquire whether racial prejudice precludes any juror from reaching a fair and impartial verdict. In reaching its decision, the Court relied on a number of state cases, including Pinder v. State, 27 Fla. 370, 8 So. 837 (1891), from which

Peter S. Arban, Jr., Alexandria, Va. (court-appointed counsel), for Conester Gore.

L. Farnum Johnson, Jr., Falls Church, Va. (court-appointed counsel), for Haywood Liles.

David H. Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty. for Eastern District of Virginia, on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

In Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), the Supreme Court held that it was reversible error for the trial judge to refuse to ask on voir dire whether racial

---

1. Counsel for Gore did not repeat the request. But in view of the district judge's emphatic refusal, repetition would have been fruitless. We have consolidated the cases on appeal and will treat the issue with respect to Gore as plain error under Fed.R.Crim.Pro. 52(b). See King v. United States, 124 U.S.App.D.C. 138, 362 F.2d 968, 969 (1966).

it quoted extensively. In that case the Florida Supreme Court held it was reversible error to refuse to ask the jurors who were empaneled to try a murder case: "Could you give the defendant, who is a negro, as fair and impartial a trial as you could a white man, and give him the same advantage and protection as you would a white man upon the same evidence?" Significantly, both Pinder and his victim were Negroes, and from the report of the case, it is apparent that the crime had no racial overtones. Some of the additional state cases cited by the Court involved interracial crimes, but in others the race of the victim was not shown. It is apparent, therefore, that the Court derived the rule it announced from sources that did not attach controlling significance to whether or not the crime involved persons of the same race. Consequently, we perceive no reason why *Aldridge* should be applied more restrictively than the precedent on which it rests.

Our reading of *Aldridge* is consistent with its interpretation by other courts. In Frasier v. United States, 267 F.2d 62, 66 (1st Cir. 1959), a conviction for false statements in a loyalty oath was overturned because the district judge refused to inquire whether the defendant's race would prevent the jury from rendering a fair verdict. The court explicitly rejected the contention that *Aldridge* was inapplicable because no crime of violence likely to arouse racial prejudice was involved. In King v. United States, 124 U.S.App.D.C. 138, 362 F.2d 968, 969 (D.C.Cir.1966), the court observed that *Aldridge* was "not limited to capital crimes or even to crimes of violence." And in Swain v. Alabama, 380 U.S. 202, 221, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Court noted that racial partiality is widely explored on voir dire. See also United States v. Dennis, 183 F.2d 201, 227 n. 35, 228 (2d Cir. 1950) (dictum), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

Also, we must reject the notion that inquiry should be banned because it could fan racial antagonisms that otherwise might lie dormant. Answering a similar argument, Mr. Chief Justice Hughes said in *Aldridge*, 283 U.S. at 314, 51 S.Ct. at 473:

"The argument is advanced on behalf of the government that it would be detrimental to the administration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute."

The denial or impairment of the right to challenge the jury has been described as "reversible error without a showing of prejudice." Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 835 (1965). However, we need not determine on this appeal whether every refusal of an accused's request for a voir dire examination on racial prejudice is such an impairment of the right to challenge jurors that it can never be harmless error. For here, contrary to the assertion of the government, it cannot be said that the error was harmless. The outcome of the case depended on weighing the credibility of the witnesses, and, as the district judge noted, many of the government witnesses were white. Although the merchant from which the goods were stolen was a corporation, the district judge recognized that it, too, could be considered white. Thus, it may be that bias, unknown to either the court or to the defendants, played a part in weighing the credibility of the witnesses and in arriving at a verdict of guilty.

In support of its argument that the error was harmless the government relies on Nickelson v. Davis, 315 F.2d 782 (4th Cir. 1963), where refusal to question the jury on racial prejudice was sustained because it lay within the dis-

cretion of the district judge.[2] That case, however, is inapposite, for it involved a civil action in which all parties were of the same race.

■ We hold, therefore, that the refusal of the accused's request for examination of the jury about racial prejudice was reversible error. We do not, however, commend the form of the question offered by the accused. Because each case presents different facts, it is not feasible to formulate a single question suitable for all occasions. Regardless of how the question is framed, it should be designed to determine whether the race of the defendant would prevent any juror from returning a fair and impartial verdict for or against either the accused or the government.

The accused also requested the court to ask the jury on voir dire: "Does any member of the jury believe that the testimony of a policeman should be afforded greater credence than the defendant merely because he is a police officer?" The judge refused this request. Courts have differed on the propriety of this and similar questions. Compare Gorin v. United States, 313 F.2d 641, 647 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963), with Brown v. United States, 119 U.S.App.D. C. 203, 338 F.2d 543, 544 (1964). We approve the rule stated in *Brown*, 338 F.2d at 545:

"[W]hen important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might

reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole. * * * We emphasize that independent of the scope of the requested query, the phrasing of the court's inquiry should include whether any juror would tend to give either more *or less* credence because of the occupation or category of the prospective witness."

See also Chavez v. United States, 258 F. 2d 816, 819 (10th Cir. 1958) (dictum), cert. denied sub nom. Tenorio v. United States, 359 U.S. 916, 79 S.Ct. 592, 3 L. Ed.2d 577 (1959).

■ In this case, from the vantage point of hindsight, it appears no error was committed. While a number of police officers were witnesses, the bare facts to which they testified were not seriously disputed. The defendants, instead, sought to place an innocent interpretation on these facts. Cf. Ross v. United States, 374 F.2d 97, 105 (8th Cir.), cert. denied, 389 U.S. 882, 88 S.Ct. 130, 19 L. Ed.2d 177 (1967).

We find no merit in the other assignments of error. The judgments are reversed and the cases are remanded for new trials.

---

2. Nickelson, suing for personal injuries arising out of an automobile accident unsuccessfully sought to have these questions asked on voir dire:
   "If the evidence shows that the plaintiff is entitled to a verdict from the defendant, do you have any bias or prejudice that would prevent you from awarding the plaintiff, a Negro, the full amount of damage to which he shows he is entitled, because of his race? In other words, would you award equal damages for equal injuries to a person regardless of his race?"
   The jury, however, never reached the question of damages, for they held the defendant not liable on the issue of negligence.