No. 73–5273. ROSS *v.* MASSACHUSETTS. Sup. Jud. Ct. Mass. Certiorari denied. ▇

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join, dissenting.

Petitioner was convicted in state court of armed robbery, assault and battery by means of a dangerous weapon, and assault and battery with intent to murder. Petitioner and his codefendants are young Negroes. Their victim was a white, uniformed security guard employed by Boston University. Petitioner requested the trial judge to direct a specific question concerning racial prejudice to the prospective jurors on voir dire.[1] The trial judge refused; instead, he made only the general inquiry mandated by Massachusetts law, whether members of the array had "expressed or formed an opinion, or [were] sensible of any bias or prejudice." The Supreme Judicial Court of Massachusetts affirmed the conviction. —— Mass. ——, 282 N. E. 2d 70 (1972).

---

[1] The specific question requested was, "Are there any of you who believe that a white person is more likely to be telling the truth than a black person?"

Petitioner sought certiorari on the ground that he had been denied the opportunity to have the jurors examined as to racial bias, a right this Court guaranteed in *Aldridge* v. *United States,* 283 U. S. 308 (1931). We granted certiorari and remanded for reconsideration in light of *Ham* v. *South Carolina,* 409 U. S. 524 (1973). On remand, the Supreme Judicial Court of Massachusetts again upheld the conviction. —— Mass. ——, 296 N. E. 2d 810 (1973).

The importance of the right at issue here—the opportunity to ascertain the racial bias of the veniremen—can hardly be gainsaid. The right to trial by an "impartial jury" is a cornerstone of our system of justice.[2]

> "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. . . . In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. *Thompson* v. *City of Louisville,* 362 U. S. 199. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807). 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' *Reynolds* v. *United States,* 98 U. S. 145, 155." *Irvin* v. *Dowd,* 366 U. S. 717, 722 (1961) (footnote omitted).

---

[2] See *Peters* v. *Kiff,* 407 U. S. 493 (1972); *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968); *Swain* v. *Alabama,* 380 U. S. 202 (1965); *Irvin* v. *Dowd,* 366 U. S. 717 (1961); *Dennis* v. *United States,* 341 U. S. 494 (1951); *Lewis* v. *United States,* 146 U. S. 370 (1892); *Pointer* v. *United States,* 151 U. S. 396 (1894).

Accordingly, in *Ham* v. *South Carolina, supra,* Mr. Justice Rehnquist, writing for a unanimous Court,[3] found constitutional error in a state court trial judge's refusal to propound a specific question on racial prejudice to the veniremen in the trial of a Negro for possession of marihuana.[4]

> "The State having created [the] statutory framework for the selection of juries, the essential fairness required by the Due Process Clause of the Fourteenth Amendment requires that under the facts shown by this record the petitioner be permitted to have the jurors interrogated on the issue of racial bias." 409 U. S., at 527.

Nonetheless, on remand, the Massachusetts court read our decision in *Ham* as limited by the particular circumstances of that case—the trial of a civil rights worker in the South. The State court found that petitioner, unlike Ham, was not likely to be a "special target for racial prejudice" and, therefore, that the trial judge did not err in refusing to make the requested inquiry.

This distinction is supported by neither logic nor precedent. Mr. Justice Rehnquist explained the basis for the Court's decision in *Ham* as follows:

> "The inquiry as to racial prejudice derives its constitutional stature from the firmly established precedent of *Aldridge* [v. *United States*] and the numer-

---

[3] Although the Court was unanimous on this issue, the author and Mr. Justice Douglas dissented on another ground.

[4] In *Ham*, as in the case before us, the trial judge asked only the general questions about bias provided for by statute. This Court observed that while a trial judge is not required to put the question about racial prejudice in the exact form suggested by the defendant, the question must be "sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." 409 U. S., at 527. The Court found the general questions propounded by the trial court insufficient for that purpose.

ous state cases upon which it relied, and from a principal purpose as well as from the language of those who adopted the Fourteenth Amendment." *Id.*, at 528.

In *Aldridge* v. *United States*, 283 U. S. 308 (1931), Mr. Chief Justice Hughes, writing for the Court, found that the "essential demands of fairness" required the trial judge to interrogate veniremen as to racial prejudice in the trial of a Negro for murdering a white policeman. The Court observed that "[n]o surer way could be devised to bring the processes of justice into disrepute" than to "permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred." *Id.*, at 315.

The *Aldridge* Court was not concerned with whether petitioner was unpopular in the community—a special target of prejudice—but rather with the potential racial "bias of the particular jurors who are to try the accused." *Id.*, at 314. The Court did not rely on any particular circumstances to justify its requirements other than the fact that "the possibility of such prejudice [against Negroes] is [not] so remote as to justify the risk in forbidding the inquiry." *Ibid.*[5] (Footnote omitted.) Nor did the Court purport to limit its holding to any region because the "question is not . . . the dominant sentiment of the community . . . ." *Ibid.*

In *Ham*, this Court reaffirmed its commitment to the holding of *Aldridge* and clarified its constitutional underpinnings. The Court emphasized the compelling nature of an inquiry into racial prejudice—the principal target of the Fourteenth Amendment. The Court also indi-

---

[5] Cf. H. Kalven & H. Zeisel, The American Jury 210, 339–344 (1966).

cated the importance of the state cases, of which the *Aldridge* Court said:

> "The practice of permitting questions as to racial prejudice is not confined to any section of the country, and this fact attests the widespread sentiment that fairness demands that such inquiries be allowed." *Id.*, at 313.

The principle that fairness demands such inquiry is, if anything, far more pervasive today than it was when *Aldridge* was decided, in both federal and state courts.[6]

Yet, the Massachusetts court, by its holding, requires a Negro defendant to establish that he is a special target for racial prejudice before being entitled to an inquiry on racial bias during the voir dire of the jury. In *Aldridge*, this Court weighed the Government's interests in refusing such a question, where it observed that:

> "If in fact [the jurors] were found to be impartial, no harm would be done in permitting the question; but if any one of them was shown to entertain a

---

[6] See *United States* v. *Carter*, 440 F. 2d 1132 (CA6 1971); *United States* v. *Gore*, 435 F. 2d 1110 (CA4 1970); *Silverthorne* v. *United States*, 400 F. 2d 627 (CA9 1968); *King* v. *United States*, 124 U. S. App. D. C. 138, 362 F. 2d 968 (1966); *Frasier* v. *United States*, 267 F. 2d 62 (CA1 1959); *Smith* v. *United States*, 262 F. 2d 50 (CA4 1958); *United States* v. *Dennis*, 183 F. 2d 201 (CA2 1950), aff'd, 341 U. S. 494 (1951); *Gholston* v. *State*, 221 Ala. 556, 130 So. 69 (1930); *State* v. *Higgs*, 143 Conn. 138, 120 A. 2d 152 (1956); *Pinder* v. *State*, 27 Fla. 370, 8 So. 837 (1891); *Herndon* v. *State*, 178 Ga. 832, 174 S. E. 597 (1934); *State* v. *Jones*, 175 La. 1014, 144 So. 899 (1932); *Giles* v. *State*, 229 Md. 370, 183 A. 2d 359 (1962); *Owen* v. *State*, 177 Miss. 488, 171 So. 345 (1936); *State* v. *Pyle*, 343 Mo. 876, 123 S. W. 2d 166 (1938); *Johnson* v. *State*, 88 Neb. 565, 130 N. W. 282 (1911); *People* v. *Decker*, 157 N. Y. 186, 51 N. E. 1018 (1898); *State* v. *McAfee*, 64 N. C. 339 (1870); *Fendrick* v. *State*, 39 Tex. Cr. 147, 45 S. W. 589 (1898).

prejudice which would preclude his rendering a fair verdict, a gross injustice would be perpetrated in allowing him to sit." *Id.*, at 314.

The state court should not be permitted to restrike that balance.

Finally, to say that petitioner is not a potential target of racial prejudice would be to ignore as judges what we must all know as men. That petitioner was tried in Boston, Massachusetts, while Gene Ham was tried in Florence, South Carolina, is of no consequence. Racial prejudice is a cultural malady that has shaped our history as a nation. It is a cancer of the mind and spirit which breeds as prolifically in the industrial cities of the North as in the rural towns of the South.[7] And where, as here and in the strikingly similar circumstances of the *Aldridge* case, a Negro is being accused of an attack on a white policeman, it would be disingenuous at best to assert that he is not apt to be a particular target of racial prejudice.

To deny this petition for certiorari is to see our decision in *Ham* v. *South Carolina* stillborn and to write an epitaph for those "essential demands of fairness" recognized by this Court 40 years ago in *Aldridge*. I fear that we "bring the processes of justice into disrepute" not only by sanctioning the denial of a right required by "essential demands of fairness" but also in failing to compel compliance by the court below with a precedent of this Court barely a year since decided. I would grant the petition.

---

[7] Cf. *Keyes* v. *School District No. 1, Denver, Colo.*, 413 U. S. 189 (1973) (desegregation of the Denver, Colo., school system); *Bradley* v. *Milliken*, 484 F. 2d 215 (CA6), cert. granted, *ante*, p. 1038 (desegregation of the Detroit, Mich., school system). See generally Report of the National Advisory Commission on Civil Disorders (1968).