Johnson v. State.

CHARLES E. JOHNSON v. STATE OF NEBRASKA.

[FILED MARCH 16, 1892.]

| 34 | 257 |
| 37 | 675 |
| 34 | 257 |
| 155 | 620 |
| 34 | 257 |
| 58 | 322 |
| 34 | 257 |
| 61 | 38 |

1. Criminal Law: INFORMATION: ADDITIONAL NAMES INDORSED AFTER CAUSE REACHED FOR TRIAL. It is within the discretion of the district court to allow additional names to be indorsed on the information in a criminal prosecution after the case is reached for trial, on the application of the county attorney and a showing of diligence by him, provided a continuance is allowed for sufficient time to enable the defendant to prepare for trial.

2. ———: ———: RULE APPLIED. In a prosecution for murder the county attorney, on the case being reached for trial, asked leave to indorse the names of additional witnesses on the information, accompanying such request with a showing that it was made at the earliest opportunity after the materiality of their testimony was learned by him. The court ordered said names to be indorsed on the information, but offered to continue the case for a week if requested by the defendant, who declined the continuance offered. *Held*, Not an abuse of discretion by the court.

3. ———: JURORS: CHALLENGE: GROUNDS. It is sufficient ground for challenge by the state, in a prosecution for murder, if a juror answer on his *voir dire* examination, that his convictions are such as to preclude him from finding the accused guilty of a crime, the penalty for which is death.

4. ———: TESTIMONY OF ACCUSED. It is not error to instruct the jury, in a criminal case, that they should take into consideration

20

the interest of the defendant in the result of the trial, in determining the credit to which he is entitled as a witness.

5. ———: EVIDENCE: PREVIOUS GOOD CHARACTER of the accused in a criminal prosecution is a fact which he is entitled to have submitted for the consideration of the jury precisely as any other circumstance favorable to him, without any disparagement by the court, hence it is error to instruct that " good character is a circumstance of great weight in doubtful cases and of less weight in less doubtful cases."

ERROR to the district court for Nemaha county. Tried below before BROADY, J.

*E. W. Thomas,* and *Stull & Edwards,* for plaintiff in error, cited, as to indorsement of names on information: *Gandy v. State,* 24 Neb., 717; *Parks v. State,* 20 Id., 517; *People v. Hall,* 12 N. W. Rep. [Mich.], 667; *Reg. v. Frost,* 9 C. & P. [Eng.], 147; *Rex v. Lord,* 2 Doug. [Eng.], 59. As to the challenge of juror: 4 Am. & Eng. Ency. Law, 828; *O'Brien v. People,* 36 N. Y., 276; *Walter v. People,* 32 Id., 160; As to interest of accused: 2 Thomp., Trials, secs. 2423, 2445; Sackett, Instructions, 36. As to evidence of good character: 2 Thomp., Trials, sec. 2444; Sackett, Instructions, 651, 652; *Harrington v. State,* 19 O. St., 269; Wharton's Crim. Ev., sec. 66, and note; *State v. Northrup,* 48 Ia., 583; *People v. Garbutt,* 17 Mich., 9; *Long v. State,* 23 Neb., 35; *Remsen v. People,* 43 N. Y., 6; *Cancemi v. People,* 16 Id., 501; *Stover v. People,* 56 Id., 319; *Comm. v. Leonard,* 140 Mass., 473.

*George H. Hastings, Attorney General (W. H. Killigar* also filed brief), *contra,* cited, as to testimony of accused: *Rider v. People,* 110 Ill., 13; *Creed v. People,* 81 Id., 569; *Dell v. Oppenheimer,* 9 Neb., 454; *Knowles v. People,* 15 Mich., 412; *Newell v. Wright,* 8 Conn., 323; 2 Thompson, Trials, sec. 2445. As to evidence of good character: *Creed v. People,* 81 Ill., 569; *Williams v. State,* 52 Ala., 412; *Long v. State,* 23 Neb., 48; *State v. Vansant,* 8 Mo.,

67; *State v. Jones,* 78 Id., 278; *People v. Samsel,* 66 Cal., 99; Sackett, Instructions, pp. 652, 653, secs. 46, 47.

POST, J. ·

The plaintiff in error, Charles E. Johnson, was, at the October, 1890, term of the district court for Nemaha county, convicted of murder in the first degree, and now seeks a reversal of said judgment on account of alleged errors occurring at the trial.

The first error assigned is the indorsement on the information of the names of witnesses by the county attorney by leave of the court on the day of the trial.

It appears from the record that the information was filed by the county attorney on the 13th day of October, 1890. On the 16th of the same month the defendant was arraigned and pleaded not guilty, and the case set for trial October 21. On the last named day, the case being reached for trial, the county attorney asked leave to indorse the names of twenty-seven additional witnesses on the information. The court, over the objection of the accused, gave the prosecutor leave to indorse said names, and on its own motion offered to postpone the trial until the Monday following, October 27, if defendant so desired. The defendant, as the record discloses, "did not request such postponement," and a jury was at once impaneled. It is apparent that the county attorney acted in good faith and requested leave to indorse the names of the witnesses on the information at the earliest moment possible after the materiality of their testimony became known to him. In view of these facts the discretion of the court in granting his request does not appear to have been abused. This case is plainly distinguishable from *Parks v. State,* 20 Neb., 517, and *Gandy v. State,* 24 Id., 717. In those cases the names of the witnesses were indorsed on the information during the trial, over the objection of the defendant, and no opportunity given to make preparations for trial after the addition of

the witnesses indorsed. In this case the defendant, after the court had given leave to add the names of the several witnesses to those on the information, elected to proceed with the trial, rejecting the offer of a continuance for a week. We are not able to discover that the defendant was prejudiced by the ruling complained of.

The next assignment of error is the excusing of two members of the regular panel on challenge for cause by the state. The first, Bagley, was asked:

Q. Have you any opinion that would preclude you from finding the accused guilty of an offense punishable by death?

A. If the court will allow me to explain.

By the court: Can you not answer the question by yes or no? You had better answer that way if you can.

A. Well, I can say yes.

The other, Ewan, was asked substantially the same question and answered as follows:

A. I would like to make an explanation; I am opposed to capital punishment as far as circumstantial evidence goes.

By the court: Then you mean to say you would not convict of a capital punishment on circumstantial evidence?

A. Yes, that is what I mean.

There is no error in the sustaining of the state's challenge in either case. Both jurors were disqualified by reason of their opinions. (Criminal Code, 468; *St. Louis v. State*, 8 Neb., 405; *Bradshaw v. State*, 17 Id., 147.) It is insisted that the jurors were both prevented from testifying fully as to their convictions on the question of capital punishment, by the action of the court. If the examination was not satisfactory to the counsel, they should have pursued the inquiry. It does not appear that there was any restriction imposed upon them by the court in that respect.

The killing of the deceased James Whiteman by the accused is not denied; in fact, it was admitted by him in express terms in his testimony. The homicide occurred

on the forenoon of the 16th day of June, 1890, on a tract
of hay land about three acres in extent, lying contiguous to,
and west of, the track of the Missouri Pacific Railroad
Company, and about eighty rods north of their homes,
respectively.    There had been a contention between them
with reference to the possession of the tract of land in
question, each claiming and asserting his right to the hay
thereon.    A material question at the trial was, which of
the contending parties was the first to reach the scene of the
tragedy on the morning of the killing.    The theory of the
state, we infer from arguments of counsel, is, that the de-
ceased was first on the ground and was in the act of cutting
the grass with a scythe when he was shot by the accused.
The accused, on the other hand, claims and testifies that he
was the first upon the premises and was cutting the grass
when the deceased came from his home and assaulted him
first with a scythe and afterwards with a pitchfork, and
that in firing the fatal shot he was acting in self-defense.
The accused was the only witness who had personal knowl-
ledge of the facts attending the killing.    The court, in
several paragraphs, instructed the jury as to the credit to
be given his testimony.    Those to which reference is made
in the brief of counsel are the 22d and 23d, which are as
follows:

 '' 22.  The law makes the defendant a competent witness
in his own behalf, and the jury should not discredit his
testimony for the sole reason that he is the defendant; still,
the jury are the judges of the weight which ought to attach
to his testimony.    And in considering what weight should
be given his testimony the jury should take into considera-
tion all the facts and circumstances surrounding the case as
disclosed by the evidence, and the interest of the defendant
in the result of the trial, and give the testimony of the de-
fendant only such weight as they believe it entitled to in
view of the facts and circumstances proven on trial.

 " 23.  In weighing the testimony of each witness the

interest, or absence of interest, of such witness in the result of the trial, should be taken in consideration by the jury. If the jury believe from the evidence that any witness has willfully and knowingly sworn falsely to any material fact in this trial, it is competent for the jury to wholly disregard the testimony of such witness so far as it is in favor of the side calling him, if they believe his testimony wholly unworthy of belief."

It is argued by counsel that the 22d paragraph is particularly objectionable for the reason that the court thereby in effect cautions the jury to regard the testimony of the accused with suspicion on account of his interest in the result of their verdict. It must be admitted that there is very respectable authority which apparently sustains this view, for example, Thompson on Trials, 2446 ; *Unruh v. State*, 105 Ind., 117. We cannot, however, regard it now as an open question in this state.

In *St. Louis v. State*, 8 Neb., 418, the trial court had instructed the jury that they were "at liberty to take into consideration the great interest which the accused has in the result." LAKE, J., in discussing the question raised by the instructions, says : "Not only were the jury, as told by the court, at liberty to consider this interest but it was their duty to do so in determining the credit to be given to the prisoner's testimony."

In *Murphy v. State*, 15 Neb., 389, REESE, J., says : "It would have been proper for the court to have instructed the jury that in weighing his (defendant's) testimony, they should consider his interest in the result of the trial."

The instruction in question is in harmony with the rule which has prevailed in this state ever since *St. Louis v. State*, and we can see no sufficient reason for reversing it now.

The twenty-third instruction does not in our opinion merit the criticism to which it has been subjected by coun-

sel. The particular objection to it is that since the only witnesses shown to have a direct interest in the result of the trial are the defendant and his wife, it must have been understood to apply only to them. It is true that such may have been the inference of the jury. It does not follow, however, that the instruction is objectionable for that reason alone. By the instruction the court stated a well recognized rule, and the fact that it is applicable to a limited number of witnesses in this case will not make it an exception to the rule.

The defendant having offered evidence tending to establish previous good character on his part, the court, on its own motion, gave instruction No. 25, as follows:

"25. Evidence of good character of the defendant is always admissible in cases of this kind. Good character is a circumstance of great weight in doubtful cases, and of less weight in cases less doubtful, but in all cases evidence on that subject is for the jury to consider in connection with all the other evidence, and render a true verdict on the whole evidence."

The judge who tried this case evidently overlooked the case of *Long v. State*, 23 Neb., 33. The language of the instruction condemned in that case is "Evidence of good character is entitled to great weight where the evidence against the accused is weak or doubtful, but is entitled to very little weight when the proof is strong."

The authorities cited, as well as the reasoning of Ch. J. REESE therein, are quite as applicable to this case. The weight of modern authority sustains the proposition that good character of the accused in a criminal prosecution is a fact that he is entitled to have submitted to the jury precisely as other circumstances favorable to him, without disparagement by the court. Judge Cooley says, in *People v. Garbutt*, 17 Mich., 26: "There are cases when it (good character) becomes a man's sole dependence and yet may prove sufficient to outweigh evidence of the most positive

Johnson v. State.

character. The most clear and convincing cases are sometimes satisfactorily rebutted by it; and a life of unblemished integrity becomes a complete shield of protection against the most skillful web of suspicion and falsehood which conspirators have been able to weave. In every criminal trial it is a fact which the defendant is entitled to put in evidence, and being in, the jury have a right to give it such weight as they think it entitled to."

In *State v. Northrup*, 48 Ia., 583, Seevers, J., examines all of the modern cases upon the subject, and states his conclusion substantially in the language used in Maxwell's Criminal Procedure, 628, viz., that the rule announced in *Webster's Case*, 5 Cush. [Mass.], 295 (and embodied in the instructions in this case), is unsound, and has been condemned in a majority of the states. Our conclusion is that the giving of the instruction referred to is error, for which the judgment of the district court must be reversed.

There is a further assignment of error, viz., the giving of instructions 19, 20, and 21, on the subject of self-defense. Counsel for plaintiff in their brief fail to call attention to any particular infirmity in them, except that by them "the court has encroached upon the province of the jury." We are not disposed to critically examine the record of over 300 pages in search of possible error under an assignment so general in its terms, particularly in view of the fact that the judgment must be reversed for the reasons already stated.

REVERSED AND REMANDED.

THE other judges concur.