CITIZENS STATE BANK OF STRATTON, APPELLEE, V. FRANK P. STRAYER, APPELLANT.

FILED APRIL 22, 1926. No. 24715.

1. **Banks and Banking:** REGULATION. The banking business, carried on pursuant to a state charter, is quasi-public and, for protection of the public and in its interests, is subject to reasonable regulation by the state.

2. ——: IMPAIRED CAPITAL: POWERS OF DIRECTORS. Section 8031, Comp. St. 1922, construed, and *held* to vest in the stockholders of a bank, whose capital is impaired or reserve depleted, power to determine whether they will repair the capital and restore the reserve to legal requirements and continue in business, or suffer the business of the bank to be voluntarily liquidated or liquidated at the hands of the state in the manner provided by law; and *held*, further, to authorize the directors of such bank to levy an assessment upon the stock, to repair the capital or restore the reserve, only when first authorized so to do by the stockholders of such bank.

3. **Constitutional Law:** STATUTES: CONSTRUCTION. Where a statute is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, the former is to be preferred.

APPEAL from the district court for Hitchcock county: CHARLES E. ELDRED, JUDGE. *Reversed and dismissed.*

*Norval Bros., Letton, Brown & Dibble* and *J. F. Ratcliff,* for appellant.

*Stewart, Perry, Stewart & VanPelt* and *Butler & James, contra.*

*Allen G. Fisher, amicus curiæ.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EBERLY, JJ.

GOOD, J.

In March, 1924, the capital of the plaintiff bank was impaired and its reserve depleted. Because of these facts, the department of trade and commerce of the state of Nebraska took possession of the bank, and in April following requested the bank to make an assessment of 100 per cent. on its capital stock, for the purpose of restoring the impaired capital and depleted reserve. On the 18th of April, 1924, the directors of the plaintiff bank adopted a resolution declaring an assessment of 100 per cent. on its capital stock, and notified the stockholders to pay such assessment by a date named. The stockholders had not authorized the directors to make any such assessment. Defendant was the owner of 19 shares of the capital stock of the plaintiff bank, of the par value of $100 each. He neglected and failed to pay the assessment. Pursuant to a notice given to defendant, the directors sold his 19 shares of stock for $100, which was applied on the assessment, leaving an unpaid balance of $1,800, to recover which this action was brought.

The above stated facts were set forth in detail in plaintiff's petition, to which defendant filed a general demurrer, which was overruled. Defendant elected to stand upon his demurrer and not to further plead. Judgment went against him for the full amount demanded in the petition. Defendant appeals.

Plaintiff bases its right to make and enforce collection

of the assessment on the provisions of section 8031, Comp. St. 1922.    That section provides:

"After the department of trade and commerce or receiver shall have taken possession of any bank under the provisions of this article, the stockholders thereof may repair its credit, restore or substitute its reserves, and otherwise place it in condition; but such bank shall not be permitted to reopen its business until the department of trade and commerce, after careful investigation of its affairs, is of the opinion that its stockholders have complied with the law, that the bank's credit and funds are in all respects repaired, all advances, if any made from the depositor's guaranty fund, with interest, fully paid, its reserve restored or sufficiently substituted, and that it should be permitted again to reopen for business; whereupon said department of trade and commerce is authorized to issue written permission for resumption of business under its charter.    The directors shall have power and authority to levy and collect assessments on the stock for the purpose of repairing the credit of the bank and any deficiency that may occur by reason of the impairment of the capital stock of said bank. If any shareholder or shareholders of such bank shall neglect or refuse, after three weeks notice, to pay the assessment, as provided in this section, it shall be the duty of the board of directors to cause a sufficient amount of the capital stock of such shareholder or shareholders to be sold at public auction after three weeks notice shall be given by posting such notice of sale in the office of the bank, and by publishing such notice in a newspaper of the city or town in which the bank is located, or in a newspaper published nearest thereto to make good the deficiency, and the balance, if any, shall be returned to such delinquent shareholder or shareholders."

Defendant contends that if the section quoted shall be construed to authorize the board of directors to levy an assessment upon the capital stock for the purpose of repairing its impaired capital or restoring its depleted reserve, without first being authorized by the stockholders of the

bank, it would be void because in conflict with sections 4 and 7, art. XII of the Constitution.   It also contends that, in any event, the statute does not authorize the taking of a personal judgment against a shareholder, but that the right to enforce the assessment can, in no event, go farther than the sale of the shareholder's stock.

In determining what was the purpose and intent of the legislature in enacting section 8031, Comp. St. 1922, it is proper to consider the situation and the rights of the parties to be affected, viz., the state, the bank and its stockholders. In this state the banking business may be carried on only by corporations.   The banking business is declared to be quasi-public and is therefore subject to reasonable regulation for the protection of the public.   It is entirely proper to require a bank, as a condition to its continuing in business, to keep its capital unimpaired and its reserve intact for the protection of its depositors and creditors.   Anything that might injuriously affect the depositors and the business interests of the community is a matter of public concern.   It is right and proper that the state should require that such business shall be conducted in such a manner as not to injure the public.   But what of the rights and obligations of the bank and its stockholders?   The stockholders are the owners of the bank and are the ones vitally interested in its success, and in determining whether they shall continue the existence of the bank under such reasonable regulations and conditions as the state may impose.   It is their undoubted right to determine whether they shall continue in or retire from business.   If they find the business unprofitable, they may liquidate in the manner provided by law.   It is not the province of the directors to compel the stockholders to continue the operation of a losing business.   The directors may or may not be heavy stockholders.   They may be the owners of a majority of the bank's capital stock, or the owners of a small percentage of it.   Usually, the officers who control and manage the bank are selected from the directors.   They may have a personal interest in keeping the bank open, so

that they may continue to draw their salaries, even though the business may be unprofitable to the stockholders. They may be willing to forego dividends upon their stock, or even willing to pay assessments thereon, for the purpose of keeping the bank open and themselves employed at profitable salaries. If the bank cannot operate and continue in business except at a loss to its stockholders, it is not to the interest of the public to compel its continued operation. Whenever such a condition arises, the stockholders may, in the manner provided by statute, voluntarily liquidate and discontinue the business. So long as the bank operates or attempts to operate, if it fails to comply with the reasonable regulations, the state may take charge and liquidate its legal obligations and close the bank.

We think that the purpose and end to be attained by the legislature in the enactment of section 8031, *supra,* was not to compel the bank to continue in business, regardless of whether it was profitable so to do, or regardless of the wishes of its owners, but, rather, it was to protect the public in the event the owners of the bank desired to continue in business. It was within the province of the legislature to say to the bank: "If you wish to continue in the banking business, you must keep your capital unimpaired and your reserve at the legal requirement. Failing so to do, the state will take charge of the bank, close its doors and enforce liquidation." To permit a minority of the stockholders, over the wishes and protests of a majority, to dictate the continuance of a losing business, would not be in the public interests, nor to protect the public, but quite the reverse. The banking business should be in the hands of careful, prudent men. If the right to retire from such business, when it proves to be unprofitable, is denied them, careful, prudent men will not invest their funds in the business. In the long run, it would be to the great detriment of the public, if such were the rule. The undoubted purpose of the legislature, in the enactment of section 8031, *supra,* was the protection of the public by requiring the reparation of capital and the restoration of

reserve, if the stockholders of the bank deemed it advisable to continue in business. That they might do so, the statute provided, when the bank was in charge of the department of trade and commerce because its capital was impaired or its reserve depleted, that the stockholders might continue upon condition that they repair the capital and restore or substitute the reserve. A later provision in the statute authorizes the directors to levy and collect assessments on the stock, for the purpose of repairing the credit of the bank. The language of the statute is not as clear and explicit as could be desired, but we think a fair interpretation thereof is that the option was given to the stockholders to determine whether or not they would continue in the business. If they determined to continue, then they were required to repair the capital and restore the reserve. Then, and then only, was it intended that the directors should levy an assessment to carry out the previously expressed purpose and wish of the stockholders. The authority given to the directors to levy an assessment presupposes that the stockholders have determined upon such course.

We have been favored with elaborate briefs and able arguments. The cases cited, however, we think are not applicable to the situation here under consideration. We find no case where similar constitutional and statutory provisions are involved. The decisions of other courts upon constitutional and statutory provisions, unlike our own, afford but little light. It is quite probable, though we do not so decide, that if the statute were given the construction contended for by plaintiff it would be violative of constitutional provisions and would be, therefore, of no force or effect. Where a statute is susceptible of two constructions, one of which would render it constitutional and the other unconstitutional, the former is to be preferred.

The conclusion reached as to the proper construction of the statute renders it unnecessary to consider the other questions which have been argued and briefed.

From what has been said, it follows that the judgment

of the district court should be and is hereby reversed and the action dismissed.

REVERSED AND DISMISSED.

Note—See (2) 23 A. L. R. 1367; 3 R. C. L. 387 et seq. 5 R. C. L. Supp. 170.    (3) 25 R. C. L. 1001; 3 R. C. L. Supp. 1437; 4 R. C. L. Supp. 1615; 5 R. C. L. Supp. 1358.