CHRIS J. KIENKE, APPELLANT, V. CHRIS KIRSCH ET AL., APPELLEES.

FILED OCTOBER 1, 1931. No. 27740.

Ross Amspoker and J. J. Harrington, for appellant.

Sterling F. Mutz, contra.

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ., and HORTH, District Judge.

HORTH, District Judge.

This is an action to recover a balance due upon a promissory note, bearing date May 6, 1918, due five years after date and executed by the defendants Chris Kirsch and George J. Kirsch, father and son, to the plaintiff, the note representing the purchase price of 61 shares of the capital stock of the Burton State Bank, of Burton, Nebraska, a commercial banking corporation, having paid-up capital of $10,000. The note is in the words and figures following:

"$9,867.36.                    Burton, Nebr. May 6, 1918.

"Five years after date, for value received, I, we, or either of us, promise to pay to the order of C. J. Kienke Ninety Eight Hundred Sixty Seven and 36/100 Dollars with interest at the rate of 8 per cent. per annum, payable semi-annually from date until paid. We, the makers, sureties, indorsers and guarantors of this note hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest, and diligence of bringing suit against any party thereto, and consent that time of payment may be extended without notice thereof to any of the makers, sureties, indorsers or guarantors of this note. And I, ————, being a married woman, do execute this note with especial reference to, upon the faith and credit of, and with the intention to charge my individual property or separate estate for its payment.

"P. O. Burton, Nebr. Negotiable and payable at the Burton State Bank, Burton, Nebr.

"(Signed) Geo. J. Kirsch,
"Chris Kirsch."

It appears from the indorsements on the back of the note that the semi-annual interest payments due upon the indebtedness represented by the note were paid on or about their due dates up to and including the payment due November 6, 1928, and that two payments were made on the principal of the note, one for $867.36 on November 12, 1923, and one for $1,000 on January 1, 1925.

The defendant George J. Kirsch made no appearance in the action and judgment by default was entered against

him for the amount due on the note. The defendant Chris Kirsch filed his separate answer, and for his defenses to plaintiff's petition pleaded: First, that the plaintiff's cause of action was barred by the statute of limitations; second, that he was surety only upon the note sued on, and that the plaintiff "claims" to have extended the time of payment on said note to the maker George J. Kirsch without the knowledge, consent or acquiescence of the answering defendant; and, third, that plaintiff did not, prior to May 8, 1929, present the note to him for payment, or demand payment thereof from the answering defendant, and gave the answering defendant no notice of nonpayment or notice of protest and did not protest said note for nonpayment, and that the provisions in said note waiving presentment for payment, notice of nonpayment and protest and notice of protest were all barred by the statute of limitations on the 5th day of May, 1928. Plaintiff's reply to this answer denies each and every allegation therein contained, except such allegations as specifically admit the truthfulness of the allegations contained in the plaintiff's petition.

A jury was waived and the cause tried to the court. The court found generally in favor of the defendant Chris Kirsch and rendered judgment dismissing plaintiff's action as to him, and from such judgment plaintiff appeals.

It appears from the undisputed testimony and from the stipulations of the parties that on the 6th day of May, 1918, the plaintiff was the owner of 61 shares of the capital stock of the Burton State Bank, of Burton, Nebraska; that on said date plaintiff sold said shares of stock for the sum of $9,867.36; that in payment therefor the defendants executed and delivered to the plaintiff the promissory note sued on; that on the following day 21 shares of said stock were transferred on the books of the bank to the defendant George J. Kirsch and 40 shares thereof were transferred on the books of the bank to the defendant Chris Kirsch, and the same remained in his name until May 2, 1928, when 20 shares thereof were transferred to the defendant George J. Kirsch and the remaining 20 shares reissued in the name of the defendant Chris Kirsch

and remained in his name until the bank was finally closed under insolvency proceedings in December, 1929; that continuously from May 7, 1918, until the bank was finally closed in December, 1929, the defendant Chris Kirsch was a director and president of the bank; that on numerous occasions during said period the defendant Chris Kirsch signed his name in the record book of said bank to the minutes of the meetings of stockholders and of the board of directors of said Burton State Bank, and in such minutes it is recited that the said Chris Kirsch was present as a stockholder or director; that at such meetings the loans, discounts, other assets, checking accounts, time deposits, overdrafts and cash in hand were listed, added and found correct, when as a matter of fact, as shown by the testimony of said Chris Kirsch and his son George J. Kirsch, the former was not present at any of such meetings and never participated in an examination of the affairs of the bank; that payments of both principal and interest were made, upon the note sued on, on the dates and in the amounts shown by the indorsements on the back thereof, and that, with one possible exception, such payments were made from the undivided profit or "dividend" account of said Burton State Bank.

The defendant Chris Kirsch, to establish his defenses, testified that he never owned any of the shares of the capital stock of said Burton State Bank; that he never purchased any of said stock from the plaintiff, and that he never participated in the affairs of said bank; that he signed the note sued on simply as surety for the defendant George J. Kirsch, and that he permitted the stock to stand in his name, and allowed his name to be used as a director and as president of said bank, so that his son George could get the bank to going—"I was wanting him to get started." The defendant Chris Kirsch also called the defendant George J. Kirsch as a witness in his behalf, and George J. Kirsch testified that he purchased the 61 shares of stock from the plaintiff, and that "the legal requirements were that we must have a board of directors; and so a part of the stock was put in his (Chris Kirsch's)

name so as to make up a board of directors." And he further testified: "About the time we were required to make a report or hold our meetings I wrote up the minutes there at the first opportunity I would have, and then I would have them sign up the minutes of the meetings at the first opportunity, and they would sign them up and not even read them over. That was about the way it was handled. That was done in order to make the records required under the banking laws."

During all of the eleven years and more that the defendant Chris Kirsch was a director of said bank the laws of Nebraska provided:

"Every director of a commercial bank, other than co-operative banks, having a capital of fifty thousand dollars or less, must be the owner of at least four per cent. of the paid-up capital stock in his own name and right." Comp. St. 1929, sec. 8-121.

"The board of directors shall hold at least two regular meetings each year, and at such meetings a thorough examination of the books, records, funds and securities held by the bank shall be made and recorded in detail upon its record book, and a certified copy thereof shall be forwarded to the department of trade and commerce within ten days." Comp. St. 1929, sec. 8-138.

"Any person who shall * * * knowingly subscribe * * * false papers, with the intent to deceive any person or persons authorized to examine into the affairs of any such corporation * * * shall be deemed guilty of a felony." Comp. St. 1929, sec. 8-133.

The statutes of Nebraska provide, and this court has held, that the banking business, carried on in pursuance to a state charter, is quasi-public, and for the protection of the public, and in its interest, it is subject to reasonable regulation by the state. Comp. St. 1929, sec. 8-114; *Citizens State Bank v. Strayer*, 114 Neb. 567.

In *Gibbons v. Anderson*, 80 Fed. 345, quoted with approval in *Gerner v. Mosher*, 58 Neb. 135, 155, it is said:

"Banks themselves are prone to state, and hold out to the public, who compose their boards of directors. The

idea is not to be tolerated that they serve as merely gilded ornaments of the institution, to enhance its attractiveness, or that their reputations should be used as a lure to customers. What the public suppose, and have the right to suppose, is that those men have been selected by reason of their high character for integrity, their sound judgment, and their capacity for conducting the affairs of the bank safely and securely."

In *Seale v. Baker*, 70 Tex. 283, quoted with approval in *Gerner v. Mosher, supra,* it is said:

"Directors of banking corporations occupy one of the most important and responsible of all business relations to the general public. By accepting the position and holding themselves out to the public as such they assume that they will supervise and give direction to the affairs of the corporation. * * * It is the duty of directors to know the condition of the corporation whose affairs they voluntarily assume to control, and they are presumed to know that which it is their duty to know, and which they have the means of knowing."

The position of president, as well as that of director of a bank, is one of trust. The public welfare is so intimately connected with the welfare of the banking institutions of the country that the strictest fidelity to that trust is required.

The acts of the defendants, as shown by their own testimony, disclose a wilful intention on their part to thrust aside both the letter and the spirit of our state banking law, to deceive the department of trade and commerce, and, in defiance of law and with a reckless disregard of the rights of others, to engage in a course of conduct relative to the affairs of the Burton State Bank, the inevitable result of which is the ruination of the bank and disaster to others, and, in such a case, it is the duty of the court to determine the character of the acts of the defendants even though their illegality has not been raised by the pleadings.

So, under the facts in the present case, to permit the defendant Chris Kirsch to say that he was not the owner

of the shares of the capital stock of the Burton State Bank which stood in his name for more than eleven years, and by virtue of his apparent ownership of which he acted as a director and as president of said bank for more than eleven years, and without the ownership of which in his own right he could not have lawfully acted as such director, would be "to award a premium for negligence in the performance of important and almost sacred duties voluntarily assumed, and to license fraud and deception of the most flagrant and pernicious character." *Seale v. Baker, supra.* It would be against public policy and subversive to the welfare of the state to permit the defendant to plead or prove his own fraudulent, if not criminal, acts, which alone, under the present record, could defeat a recovery in this action. Where a party employs legal instruments of an obligatory character, for fraudulent and deceitful purposes, it is sound law, as well as pure justice, to leave him bound who has bound himself, and, in the determination of this case, the defendant Chris Kirsch will not be heard to say that he was not the owner in his own right of the shares of the capital stock of the Burton State Bank standing in his name, and by virtue of which he acted as a director of the bank over a period of more than eleven years.

From the foregoing it follows that the defendants Chris Kirsch and George J. Kirsch are both principals upon the note in suit; that both made the payments of principal and interest indorsed thereon, and that the trial court erred in rendering judgment in favor of the defendant Chris Kirsch, in dismissing plaintiff's action, and in dissolving the attachment.

Because of the errors herein pointed out, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.