WENCEL H. KIRCHMAN v. STATE OF NEBRASKA.

FILED FEBRUARY 25, 1932. No. 27993.

*Norval Brothers, O'Sullivan & Southard* and *H. A. Bryant,* for plaintiff in error.

*C. A. Sorensen, Attorney General, Irvin Stalmaster* and *J. J. Thomas, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

Upon September 18, 1930, an indictment, properly indorsed "A True Bill," was returned by the grand jury in Saunders county, charging the plaintiff in error, hereinafter called the defendant, Wencel H. Kirchman, who was the cashier of the Nebraska State Savings Bank, of Wahoo, Nebraska, and another, with intent to deceive, injure and defraud said bank, its officers, and other persons, by executing a release of a mortgage in the sum of $7,500 and discharging the same of record. The defendant filed a demurrer to the indictment, and, upon its being overruled, made application for a change of venue, with a showing in support thereof, and thereafter the state confessed said motion and the district judge directed that the venue be changed to Seward county, Nebraska. Trial was begun upon April 13, and upon April 24, 1931, the jury returned a verdict of guilty, upon which verdict the defendant was sentenced to serve 10 years in the penitentiary and to pay a fine of $2,500.

Defendant prosecutes error to review the record in this court. The petition in error sets out some 24 allegations of error, each of which has been carefully considered by this court. It is especially urged in the brief that the court erred in overruling the defendant's demurrer to the indictment, and in the giving of each of the 22 instructions, and in refusing to give 6 instructions offered by the defendant. It is also urged that the indictment was not sufficiently specific, definite and certain to meet the re-

quirements of section 3, art. I of the Constitution of the state of Nebraska, which provides that no persons shall be deprived of their liberty without due process of law, and that the indictment also violated, for the same reason, section 1 of article XIV of the amendments to the Constitution of the United States. It is also contended that the sentence imposed upon the defendant is illegal and excessive, and is null and void because the same is made to run consecutive to a sentence previously pronounced.

The evidence, which is found set out in two large leather-bound volumes of the bill of exceptions, shows that the defendant, who is 47 years of age, was born at Wahoo, Nebraska, and has always resided there; that he is a married man, with a family, and has been connected with the Saunders County National Bank at Wahoo since he was 17 years of age, starting in as a messenger; that the father of the defendant was president of both the Saunders County National Bank and the Nebraska State Savings Bank up to the time of his death in July, 1924, and was succeeded in that position in both banks by Frank J. Kirchman, uncle of the defendant, who held that office until both banks closed on April 15, 1930; that the defendant was cashier of both banks; that in the Nebraska State Savings Bank, the uncle drew $125 a month as president, while the defendant drew $50 a month as cashier; the uncle drawing $200 as president of the Saunders County National Bank, the defendant drawing $175 as cashier of the latter institution, and both the president and the cashier had sons working in the banks. Each of the banks occupied the same banking rooms, there being no partition between the two banks, but the Nebraska State Savings Bank, which began business March 17, 1909, had its name in a sign over one of the wickets in the banking room of the Saunders County National Bank. The defendant and his uncle occupied adjoining desks, and the uncle had a little private room adjoining his desk, and only rarely sat at his desk out in the banking room, and usually transacted his business in his private office.

Nels and Amanda Peterson borrowed of the Nebraska State Savings Bank $7,500, and gave a mortgage, dated April 3, 1923, upon 120 acres of land to secure the same. The notes were drawn in the form of three first mortgage bonds, in the sum of $2,500 each, which were sold to Daniel Dailey, Frank Dolezal and Martin Thorson. Nels Peterson died July 1, 1924, leaving his estate and his widow both bankrupt. The land described in the mortgage was sold to the defendant by the executor, Charles Slama, on June 14, 1927, for $10, subject to the mortgages outstanding. The defendant, being the owner of this land, found a purchaser in one John Pokorny for $13,200, the deed to John and Antonia Pokorny being dated September 26, 1928. In payment of this sale, Pokorny paid $6,000 in cash on September 26, 1928, and gave a mortgage upon October 1, 1928, for $7,200 to the Nebraska State Savings Bank. The defendant, as cashier, and his uncle, Frank J. Kirchman, as president of the Nebraska State Savings Bank, in order to show a clear title for the Pokorny sale, executed on October 11, 1928, and filed on October 25, 1928, the said bank's release of the original Peterson mortgage in the sum of $7,500, but did not take up or pay off the three outstanding mortgage bonds of $2,500 each, secured thereby, and, for the crime of issuing this release, he was tried by a jury in Seward county. The original Peterson mortgage became due in 1928, and the defendant and his wife, Lila, issued an extension agreement on it for five years upon April 1, 1928, giving new coupon notes, with interest, to the holders of the three mortgage bonds, which was done a short time before he executed the release of the $7,500 mortgage back of these bonds. The holders of the three $2,500 renewal bonds continued to receive their interest for the years 1929 and 1930, notwithstanding the security had been released by the defendant.

1. The defendant's counsel first contends that the demurrer to the indictment should have been sustained, for the reason that the indictment is a mere recital of evi-

dence, rather than a charge of any offense, and, to illustrate this, says that the indictment recites, among many other things, that on April 3, 1923, Nels Peterson executed three notes of $2,500 each, and a mortgage securing them, to the Nebraska State Savings Bank; that on April 16, 1923, one of the bonds was sold to Dailey, on April 27, 1923, another bond was sold to Dolezal, and on May 19, 1923, the third was sold to Thorson; that on June 14, 1927, Slama, executor, conveyed the Peterson land to the defendant; that April 1, 1928, the defendant extended the Peterson mortgage and gave new coupons to the original purchasers; that on September 26, 1928, the defendant conveyed the land to Pokorny; that on October 1, 1928, Pokorny gave four notes and mortgage to the Nebraska State Savings Bank for a total of $7,200; and the defendant then says that this indictment concludes with the following allegation:

"On or about the 11th day of October, 1928, said defendants, Wencel H. Kirchman, in the name of W. H. Kirchman, and Frank J. Kirchman, in the name of F. J. Kirchman, acting as officers of said banking corporation, *with the intent aforesaid*, and in the manner aforesaid, unlawfully, wilfully, fraudulently, feloniously, and falsely, did then and there, then and there being, execute a release of said mortgage for the sum of Seventy-Five Hundred Dollars ($7,500) discharging the same of record."

Defendant insists that this indictment charges an intent to defraud, on October 11, 1928, by the doing of certain acts performed in 1923, 1924, 1927, and 1928, the date of the commission of some of such acts being more than seven years prior to the return of the indictment, and more than five years prior to the date when it is charged that the crime was committed, and that these acts cannot be disregarded as surplusage, because "An allegation in an indictment descriptive of that which is essential to the charge therein made is a material allegation and cannot be rejected as surplusage." 14 R. C. L. 191, sec. 37. See *Goodlove v. State*, 82 Ohio St. 365, 19 Ann. Cas. 893, 30 L. R. A.

n. s. 134.; *State v. Herrera*, 28 N. M. 155, 24 A. L. R. 1134.

"The accused may demur when the facts stated in the indictment do not constitute an offense punishable by the laws of this state, or when the intent is not alleged, when proof of it is necessary to make out the offense charged." Comp. St. 1929, sec. 29-1809.

The accused was entitled to a plain, concise statement of the charge against him. To allege every material fact leading up to the offense charged required in this case certain allegations, to which objections are laid. This indictment consists of about four typewritten pages, and sets out, in the greatest detail, each particular step, terminating with the signing of the release of the mortgage, which act it is charged he did, unlawfully, wilfully, fraudulently, feloniously, and falsely, with intent to defraud. We may grant that the recitations about the giving and recording of the mortgage years before, and the sale of the three $2,500 notes secured thereby, while not a part of the criminal act itself, yet laid the foundation therefor, and together formed the opportunity which he used, to the injury of others. But, is it not to the advantage of the defendant to have all of the facts leading up to the offense charged in minute detail? It is required that such necessary details be set out as will enable the court to pass on the question whether a criminal offense has been committed, and, on the other hand, the law requires that the defendant be informed of such facts as will clearly identify the entire transaction for which he is held to answer.

It may be admitted that perhaps some facts in this long indictment need not have been recited in such great detail; yet is this sufficient ground upon which to found a demand that this court reverse the conviction? "The law books are replete with cases in which defendants have gone free on the basis of some minor defect in the indictment." 9 Neb. Law Bulletin, 161. And our legislature has passed an act which will tend to avoid this happening in Nebraska: "No indictment shall be deemed invalid * * * for any other defect or imperfection which does not tend to the preju-

dice of the substantial rights of the defendant upon the merits." Comp. St. 1929, sec. 29-1501.

A patient study of this indictment and the briefs, together with each of the authorities cited, leads to no other conclusion but that the substantial rights of the defendant have not been prejudiced in this case by setting out in the indictment each and all of the preliminary details leading up to the criminal act charged therein.

2. The greater portion of the defendant's brief is devoted to an attack upon each of the 22 instructions given, and the error in refusing to give the 6 instructions offered by the defendant and refused by the court.

Instruction No. 2 sets out in four numbered paragraphs a concise statement of the material and essential elements of the crime charged, which the state must prove to warrant a conviction. Defendant then argues that there is no evidence showing that the defendant intended to or did defraud the Nebraska State Savings Bank, and says:

"The giving of an instruction which submits to the jury the existence or nonexistence of a fact material to the issues in the case on trial, when no evidence has been introduced which would support a finding of its existence, is error for which the judgment may be reversed." *Morearty v. State,* 46 Neb. 652.

The citation gives us an approved holding on the point there involved, yet let us examine the portion of the instruction as given which charges that the defendant "made such use of the said banking corporation with the intent * * * to injure and defraud said banking corporation, or with the intent * * * to injure and defraud Daniel Dailey, Frank Dolezal and Martin Thorson, or either of them." A careful reading of the instruction does not bear out the objection laid against it.

This court holds that it is considered better practice in a felony case to charge the jury, in concise and informal language, exactly what evidence is essential to authorize a conviction, rather than to copy the entire indictment into the instructions. *Dixon v. State,* 46 Neb. 298; *State*

*v. Bater*, 232 S. W. (Mo.) 1012. The court, in the case at bar, followed this approved practice, and we find no merit in the objections made thereto.

3. The defendant had submitted to the trial judge his requested instruction, No. 6, that where the defendant has introduced testimony tending to show his previous good reputation for being an honest, truthful and law-abiding citizen in the community in which he has lived, and continuing for about half a page, and terminating with: "It may be considered as tending to show that a person of good reputation would not be likely to commit the crime charged; to show that a person of good character and reputation is far less apt to commit crime than a person of bad character or reputation." In the place of this, the court gave instruction No. 12, which was about half as long. The defendant objects to the court's substituting its No. 12 for the offered instruction, No. 6, on the ground that instruction No. 6, offered, presented the good reputation of the defendant prior to the time the offense was committed, while the court's instruction presented an entirely different issue, the good character of the defendant *at the time of trial.* This court has carefully examined both of these instructions and does not find the error indicated in the one given by the trial judge.

Several approved instructions on good character, embracing practically the language used by the trial court, may be found in 1 Corcoran, Nebraska Instructions to Juries (2d ed.) 359-361. See *Strong v. State,* 106 Neb. 339; *Wakeley v. State,* 118 Neb. 346; *Linn v. United States,* 251 Fed. 476; 16 C. J. 981; *Latimer v. State,* 55 Neb. 609. It is a well-settled rule that it is not necessary to give an instruction in the exact language offered by counsel, where the same subject is adequately covered by instructions given by the trial court.

4. Instruction No. 13 is attacked for stating that evidence was introduced by both the state and the defendant in regard to his general reputation for truth and veracity, and the defendant insists that no one testified that the de-

fendant's reputation was good at the time of the trial, and that was not an issue in the case, and that the only evidence introduced by the defendant was as to his good reputation for being an honest and law-abiding citizen prior to the time the alleged offense was committed. It may be admitted that the instruction No. 13 could have been couched in more apt language, yet nothing therein given would mislead the jury. It was not error to call attention to the fact that "the defendant, Wencel H. Kirchman, in this case has availed himself of the right under the law to testify as a witness in his own behalf, and his credibility may be impeached the same as any witness." *Johnson v. State,* 34 Neb. 257; *Palmer v. State,* 70 Neb. 136; *Davis v. State,* 31 Neb. 247; *Philamalee v. State,* 58 Neb. 320.

5. Cautionary instructions. Instruction No. 20 was, in brief, that, although the members of the jury might sympathize with those who suffer, yet they were bound by their oaths to administer justice; that no question of misery, sentiment, or sympathy, or anything else, should reside with them; that they must be just to the state and equally just to the defendant. This instruction is attacked by the defendant as an unnecessary lecture to the jury. It is charged that it is an entirely uncalled for and unwarranted caution; that it scolds them about having any sympathy for the defendant; that, by referring to their oaths, and asking them to assist the court, it becomes "a patent intimation that the court's idea of justice in this case was a verdict of guilty."

In *Dinsmore v. State,* 61 Neb. 418, a cautionary instruction is set out in full, in which the members of the jury are told that they are "ministers of justice," and that "it is absolutely necessary and essential to the preservation of society that law should be enforced," and similar objections were made to it as are made in the present case; yet this court said it was merely a cautionary instruction, which the trial court may, in its discretion, give or not. See *Smith v. State,* 4 Neb. 277.

In the trial of felony cases, it may occur that unfairness

may arise in the final arguments of counsel; in other cases, in a crowded courtroom the feelings or desires of the audience may become manifest to the jury, and affect the jury to a greater or less extent in reaching a verdict. In such cases the trial judge may, and where there is a seeming necessity should, caution the jury to be governed by the evidence, and not to allow sympathy or prejudice to influence their verdict. *People v. Turner,* 265 Ill. 594, Ann. Cas. 1916A, 1062; *Preston v. Walker,* 26 Ia. 205, 96 Am. Dec. 140; *People v. Nunn,* 120 Mich. 530. It has been held proper to instruct each juror to bear in mind the obligation of his oath and that he should follow the guidance of his conscience. *Wimberly v. State,* 12 Ga. App. 540. And, on the other hand, it has been held that it is a mistake to give instructions which have a tendency to lessen the sense of the jury's responsibility. *Adams v. State,* 135 Ind. 571. "There is no merit in the assignment of error relating to the instruction impressing upon the jury the importance of the case to the state. The court was equally emphatic in stating its importance to defendant." *State v. Mueller,* 122 Minn. 91. To meet the necessities of such a situation in important felony trials, we find one instruction which has been given for years in many states, and was given in the case of *Ridings v. State,* 108 Neb. 804, and in many other cases, and, while not identical in every clause with instruction No. 20 in this case, it is very similar, and reads as follows:

"The duty of counsel and the court has now been performed. The counsel engaged in this case have been untiring in their efforts to bring before you all possible evidence that may aid you in arriving at the truth. They have ably assisted you in applying the evidence to the facts in dispute. The court has endeavored to rightly advise you in the law, and now there confronts you the final and important duty of pronouncing upon the guilt or innocence of the defendant. I submit this case to you with the confidence that you will faithfully discharge the grave duty resting upon you without, upon the one hand, being

moved by any undue demand for conviction on the part of counsel for the state, or being swayed from its right performance by any undue appeal to your sympathies. You will bear in mind that the liberty of the accused may neither be trifled away, nor taken by careless or inconsiderate judgment. But if, after a careful consideration of the law and the evidence in the case, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should return your verdict accordingly. You must be just to the defendant and equally just to the state. As manly, upright men, charged with the responsible duty of assisting the court in the administration of justice, you will put aside all sympathy and sentiment, all consideration of public approval or disapproval, and look steadfastly and alone to the law and evidence in the case, and return into court such a verdict as is warranted thereby." (Transcript, p. 37.)   See *Hinshaw v. State,* 147 Ind. 334.

This court has carefully examined each of the other alleged errors presented for a reversal of this case, and does not find error therein, including the errors alleged in sustaining a motion to strike out certain evidence several days after it was admitted. The defendant insists that this establishes a bad precedent, and in effect makes a new rule, which would read about as follows: Allow an attorney to "get all you can on the examination of your own witness and before you rest your case have the court strike out that which does not serve your purposes."

His proposition of law No. 11 reads as follows: "Several days after a state's witness had left the stand the court sustained a motion of the prosecutor, made at the time he rested his case, to strike as not responsive an answer of the witness given on his direct examination and which was material to the inquiry. This was prejudicial error."

I Wigmore, Evidence (2d ed.) sec. 19, says: "An objecting opponent is not entitled to treat a ruling as final, and therefore he cannot complain of a subsequent revocation of a ruling, merely in so far as the temporary ad-

mission of inadmissible evidence against his objection may obtain consideration for it in the minds of the jurors; for the instruction which will accompany the subsequent striking out of the evidence must be supposed to be obeyed by the jurors; except in extreme cases which obviously call for a stricter treatment."

In a recent civil case, this court condemned the acts of the defendants, who thrust aside both the letter and the spirit of our banking laws, and, with a reckless disregard of the rights of others, engaged in a course of conduct relative to the affairs of the Burton State Bank, the inevitable result of which was the ruination of the bank and disaster to others. *Kienke v. Kirsch,* 121 Neb. 688.

In a well-written article, telling why Nebraska should adopt the model code of criminal procedure prepared by the American Law Institute, found in 9 Neb. Law Bulletin, 146, is quoted the statement from President Hoover's inaugural address, as follows: "Every student of our law enforcement knows full well that it is in need of vigorous reorganization; that its procedure unduly favors the criminal. * * * In our desire to be merciful the pendulum has swung in favor of the prisoner and far away from the protection of society." Nebraska lawmakers have given to this court a provision which clearly provides: "No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1929, sec. 29-2308.

In the case on trial, the defendant admits that he signed the release of this mortgage, but argues that, as he did not read it, and simply signed his name to the release on the line indicated by a relative, he should not be responsible for this act. If pulling the trigger of a supposedly unloaded gun kills, can the actor avoid punishment? No.

The jury patiently listened to the evidence introduced for days, and heard the defense offered by the defendant, and held him to be guilty as charged. This court, finding no error in the record of the trial court, hereby affirms the same.

AFFIRMED.

GOOD, J., not participating.